■ CAROL A. BEST, Appellant, v CHRISTOPHER J. BLEAU, Respondent. [752 NYS2d 427] —Carpinello, J. Appeal from an order of the Supreme Court (Canfield, J.), entered November 1, 2001 in Albany County, which granted defendant's motion for summary judgment dismissing the complaint.

Following a February 1996 automobile accident with defendant, plaintiff commenced this action to recover for an injury she allegedly developed as a result thereof, namely, the reoccurrence of postural vertigo. At issue on appeal is a decision of Supreme Court granting defendant's motion for summary judgment dismissing the complaint on the ground that plaintiff did not suffer a serious injury within the meaning of Insurance Law § 5102 (d). Upon our review of the record, we agree with Supreme Court's determination and, accordingly, affirm.

Prior to February 1996, plaintiff suffered from a host of medical ailments, including arthritis, fibromyalgia, chronic fatigue syndrome and, most notably, vertigo. Indeed, some four months before the subject accident, plaintiff's treating otolaryngologist repaired a perilymph fistula in her right ear to relieve vertigo symptoms.[1] The vertigo reappeared following the accident warranting a second surgery in April 1996 to again repair the perilymph fistula. Plaintiff claims that her vertigo never completely resolved after this second surgery and testified at an examination before trial that she experiences daily vertigo and loss of balance requiring the constant use of a cane. Notably, however, as of her examination before trial, she had not seen her treating otolaryngologist in nearly four years.[2]

In support of summary judgment, defendant submitted the affidavit of an independent examining neurologist who concluded, upon his physical examination of plaintiff and review of her medical history, that there is no objective evidence of any neurological injury, that her gait is not consistent with a "labyrinthine" (i.e., inner ear) disorder and that the subject accident did not cause any serious or permanent injury or disability. With respect to plaintiff's complaints of postaccident vertigo, this physician questioned that same was caused by the accident, noting inconsistencies between her subjective complaints of dizziness and concomitant physical abilities, as well as the intermittent nature of such complaints. This expert further offered alternative explanations for plaintiff's dizziness based on other ailments suffered by her. Contrary to plaintiff's contention, defendant's submissions were sufficient to make a prima facie showing that she did not suffer a serious injury as a matter of law, thus shifting the burden to her to raise a triable issue of fact (see e.g. Gaddy v Eyler, 79 NY2d 955, 956-957). This she has failed to do.

The two categories of serious injury alleged by plaintiff are "permanent loss of use of a body organ, member, function or system" and "significant limitation of use of a body function or system" (Insurance Law § 5102 [d]). Plaintiff's inability to provide competent proof establishing the former category can

---

1. The degree to which her symptoms were relieved by this surgery is somewhat unclear. While plaintiff testified at an examination before trial that her preaccident vertigo was "completely resolved" within two weeks of her first surgery, she averred in an affidavit in opposition to summary judgment that her vertigo was "dramatically lessened" by the surgery.

2. Plaintiff's last treatment with this physician was on April 14, 1997. Although the otolaryngologist noted in her medical record that he would "see her again in 6-9 months," it is undisputed that she never saw him, or any other otolaryngologist, again.

be readily unveiled. In order to satisfy this particular category of serious injury, any permanent loss of use must indeed be "total" (*Oberly v Bangs Ambulance*, 96 NY2d 295, 299). Here, plaintiff herself did not describe any loss of use as being "total." For example, while she testified that her vertigo symptoms prevent her from lifting, shopping and performing certain household tasks, the record also reveals that it has not prevented her from driving, painting the exterior of her home, vacationing or participating in physical therapy for an unrelated medical ailment. More importantly, plaintiff's treating otolaryngologist, the only expert to submit an affidavit in opposition to summary judgment, did not render a medical conclusion that the alleged permanent loss of "balance function" suffered by plaintiff is in fact a "total" loss of balance function, thus eliminating this category of injury as a source of recovery (*see id.*; *see also Mikl v Shufelt*, 285 AD2d 949, 950).

Turning to the second category of serious injury alleged, the Court of Appeals has recently reiterated that an opinion concerning same requires a comparative determination of the degree or qualitative nature of the injury based on the normal function, purpose and use of the body part and must be supported by objective medical evidence (*see Toure v Avis Rent A Car Sys.*, 98 NY2d 345, 350-351). While plaintiff's treating otolaryngologist may have sufficiently contradicted the skepticism of defendant's expert that the accident caused a reoccurrence of the perilymph fistula, this does not a fortiori establish that plaintiff's reopened perilymph fistula and resulting vertigo qualify as a serious injury. Said differently, even assuming that the accident exacerbated a preexisting condition, plaintiff's expert failed to provide objective medical findings and diagnostic tests to support the claim that plaintiff's renewed loss of balance function itself constitutes a serious injury as defined by Insurance Law § 5102 (d).

First, the otolaryngologist failed to provide a qualitative or detailed assessment of plaintiff's condition (*see Dabiere v Yager*, 297 AD2d 831, 832, *lv denied* 99 NY2d 503). To this end, while plaintiff frames her condition as a "daily" problem and "significant limitation on [her] balance function," certain activities undertaken since her second surgery, namely, outdoor painting and physical therapy, negate such subjective assessments. Moreover, plaintiff's expert failed to provide an objective basis

for his opinions with a comparison to plaintiff's "normal"[3] balance function (compare Santos v Marcellino, 297 AD2d 440). Nor does he identify the results of any diagnostic tests to support plaintiff's claim of a significant limitation of use. Rather, his opinions are wholly conclusory and based on plaintiff's subjective complaints of dizziness following the accident (compare Fenstamacher v Reyell, 152 AD2d 890), complaints which have been intermittent and which he himself documented as being caused by hyperventilation during his last examination of her. In short, the only proof that plaintiff's injury has "significantly" limited her ability to perform routine activities is plaintiff's testimony and averments, no specific or detailed limitation having been established by competent medical evidence.

Finally, also fatal to plaintiff's effort to survive summary judgment is the significant time period between her expert's last medical examination of her (see n 2) and his present opinions (see Trotter v Hart, 285 AD2d 772, 773; Mejia v Thom, 280 AD2d 528), particularly given the fact that at no time during that final examination, or any previous examination for that matter, did he conclude that any injury suffered by her was significant or that any future treatment would be superfluous (compare Toure v Avis Rent A Car Sys., supra at 355).

Crew III, J.P., Peters, Lahtinen and Kane, JJ., concur. Ordered that the order is affirmed, with costs.

---

**3.** This is particularly important in this case since at issue is a preexisting condition (see e.g. Dabiere v Yager, supra; cf. Fenstamacher v Reyell, 152 AD2d 890).