■ MICHAEL DREXLER et al., Appellants, v MICHAEL P. MELANSON, Respondent. [754 NYS2d 433] —Kane, J. Appeal from an order of the Supreme Court (Reilly, Jr., J.), entered March 1, 2002 in Schenectady County, which granted defendant's motion for summary judgment dismissing the complaint.

Plaintiff Michael Drexler (hereinafter plaintiff) and his wife, derivatively, commenced this action alleging that plaintiff sustained serious injuries in a June 1997 automobile accident, when his vehicle was rear-ended by defendant's vehicle in the City of Schenectady, Schenectady County. After joinder of issue, defendant moved for summary judgment dismissing the complaint alleging that plaintiff did not sustain a serious injury as defined in Insurance Law § 5102 (d). Plaintiffs opposed the motion and cross-moved for partial summary judgment on the issue of liability. Upon granting defendant's motion, Supreme Court determined that plaintiffs' cross motion was moot. Plaintiffs appeal.

Plaintiffs contend that plaintiff's injuries to his cervical, thoracic and lumbar spine, his knee and his vertigo qualify under three of the categories posited by Insurance Law § 5102 (d), namely, that he suffered a permanent consequential limitation of use of a body organ or member, a significant limitation of use of a body function or system, and that he was unable to perform substantially all of the material acts that constituted his usual and customary duties for not less than 90 days during the first 180 days following the accident. Contrary to plaintiffs' assertion, defendant sustained his prima facie showing that plaintiff's injuries were not serious through the proffer of plaintiff's emergency room records and the records and reports of plaintiff's treating orthopedist, neurologist, chiropractor and neurosurgeon (see Gaddy v Eyler, 79 NY2d 955, 956-957; Evans v Hahn, 255 AD2d 751, 751).

Following the accident, plaintiff was taken to the hospital emergency room where X rays of his cervical and lumbar spine were conducted and determined to be normal. Plaintiff was diagnosed with muscle spasms and given pain medication. Plaintiff was advised to get bed rest for four days, after which he could return to work, and he was released. Plaintiff was treated by an orthopedist on five occasions from June 9, 1997 through September 22, 1997. On plaintiff's August 14, 1997 visit, the doctor noted a completely normal cervical range of

motion and a lumbar range of motion carried out "quite well," with no spasms and no difficulties. The doctor found a full range of motion in plaintiff's right knee without any objective signs of injury. He noted subjective complaints of stiffness, which he attributed to lack of exercise. At this August 14 visit, the doctor removed all work restrictions for plaintiff, significantly permitting him to resume assisting his father in his canoe business, which involved lifting canoes weighing up to 100 pounds. On plaintiff's final visit to the orthopedist on September 22, 1997, the doctor noted a totally normal physical exam other than some stiffness. Plaintiff was permitted to engage in sports, such as softball and basketball.

The neurologist's medical records from his August 13, 1997 and September 25, 1997 examinations of plaintiff noted "some tenderness over the trapezius muscles with trigger points in [their] medial portion" and "full range of motion of the neck," and observed that plaintiff "appears to be making a good recovery." Plaintiff was seen by another neurologist, Philip Marra, on June 30, 1999, two years after the accident, and on January 13, 2000. Marra's physical examination revealed no objective signs of injury and expressed an initial impression that plaintiff had cervical nerve root irritation on the right at C-5. He recommended diagnostic testing, which diagnostic testing did note minimal multilevel disc bulging with no focal disc herniation, spinal stenosis or neural compression. An EMG and nerve conduction study was performed, which noted evidence of reinnervation in the right C5-6 root distribution. Despite these tests, Marra's January 13, 2000 report does not contain a diagnosis and again reveals normal neurological testing. The doctor recommended further testing, which apparently was not done. Notably, Marra expressed no opinion as to the relationship between plaintiff's complaints and the automobile accident two years earlier. Based upon these submissions, we find that defendant's moving papers were sufficient to meet his initial burden of proof and shifted to plaintiffs the burden of raising a triable issue of fact through competent medical evidence based upon objective medical findings and diagnostic tests (*see Toure v Avis Rent A Car Sys.*, 98 NY2d 345, 353).

In opposition, plaintiffs rely primarily on the affidavit and records of plaintiff's treating chiropractor, who treated him on more than 200 occasions from June 23, 1997 to December 31, 2001. "When the report of a chiropractor is used to establish competent medical evidence based upon objective medical findings, the report must 'identify the tests * * * used, the degree

of limitation or any treatment recommendations' " (*Trotter v Hart*, 285 AD2d 772, 773, quoting *Fountain v Sullivan*, 261 AD2d 795, 796). Here, plaintiff's treating chiropractor diagnosed him with cervical and lumbar sprain/strain and subluxations of the pelvis, sacroiliac joints and the lumbar, thoracic and cervical back. He opined that these injuries were a direct result of the June 1997 accident and that plaintiff "has a permanent and consequential limitation of the use of his cervical spine of 20-25%, of his thoracic and lumbar spine of 20-25%, of his knee area of 20-25% and of his vertigo of 50-100% when * * * plaintiff's vertigo symptoms are present and of 25% when they are not." Although the chiropractor recites that he performed "several neurological tests," he is unable to ascribe a specific name to any of the tests nor does he provide any of the results of same. The doctor does make reference to testing performed by plaintiff's other medical professionals, but does not indicate how those tests relate to any of plaintiff's symptoms. Significantly, based upon these same tests, neither plaintiff's orthopedist or neurologist found any ongoing condition related to this accident. Neither the chiropractor's records nor his report identify what plaintiff's alleged knee injury is nor how it was diagnosed. Finally, with respect to the chiropractor's diagnosis of vertigo, the only mention of vertigo in his records is on March 25, 1998, when plaintiff complained to him of dizziness, off and on. "Faced with defendant's submissions, it was incumbent upon plaintiff[s] to 'set forth "competent medical evidence based upon objective medical findings and diagnostic tests to support [their] claim" ' " (*Cody v Parker*, 263 AD2d 866, 867, quoting *Tankersley v Szesnat*, 235 AD2d 1010, 1012, quoting *Eisen v Walter & Samuels*, 215 AD2d 149, 150). Here, plaintiffs have demonstrated nothing more than a mild short-term, cervical and lumbar strain based upon plaintiff's own subjective complaints of pain.

With respect to the 90/180-day claim, this Court has consistently recognized that such a claim must be supported by objective or credible medical evidence (*see Jones v Malark*, 261 AD2d 788, 790). Plaintiffs submitted an affidavit in which plaintiff stated that he was confined to his bed for three weeks and to his home for 90 days following the accident. Plaintiff further averred that he was unable to perform his household and employment duties to the same degree as prior to the accident and has been prevented from participating in recreational and sporting activities. These self-serving statements, however, are belied by the record. With the exception of the constraints placed on his lifting, there were no other restrictions imposed upon plaintiff which would show that he had sustained a

medically-determined injury or impairment of a nonpermanent nature which prevented him from performing substantially all of his usual and customary daily activities for not less than 90 days during the 180 days immediately following the accident. Accordingly, we agree that plaintiffs failed to make a sufficient showing to raise an issue of fact supporting their claim of serious injury within the purview of Insurance Law § 5102 (d).

Cardona, P.J., Mercure, Peters and Rose, JJ., concur. Ordered that the order is affirmed, with costs.