■ THERESA DAVIS, Appellant, v VINCENT T. EVAN, Respondent. [758 NYS2d 203] —Spain, J. Appeals (1) from an order of the Supreme Court (Canfield, J.), entered January 23, 2002 in Rensselaer County, which granted defendant's motion for summary judgment dismissing the complaint, and (2) from an order of said court, entered June 28, 2002 in Rensselaer County, which denied plaintiff's motion for reconsideration.

Following a January 29, 2000 automobile accident in which a vehicle operated by defendant allegedly struck the side of the vehicle in which plaintiff was a passenger, plaintiff commenced this action to recover for injuries to her spine, back and neck, including a herniated disc which she attributes to this accident. In her bill of particulars, plaintiff claimed to have suffered serious injuries under four categories: a permanent loss of use of a body organ, member, function or system; a permanent consequential limitation of use of a body organ or member; a significant limitation of use of a body function or system; and a nonpermanent injury under the 90/180 day category (Insurance Law § 5102 [d]). Supreme Court granted defendant's motion for summary judgment dismissing the complaint, finding plaintiff failed to overcome defendant's prima facie showing that she did not suffer a serious injury. Thereafter, Supreme Court denied plaintiff's motion to reargue or to renew. Upon our review of the record on plaintiff's appeal from both orders, we affirm.

In support of his summary judgment motion, defendant submitted the affidavit and report of an independent orthopedic surgeon who, after examining plaintiff on August 17, 2001 and reviewing her medical records and history, concluded that there was no objective evidence that plaintiff sustained a serious injury or "injury of any substance" as a result of this accident, although she may have suffered a "very minor cervical sprain." He concluded that despite the C5-6 and C6-7 disc herniation reflected in the March 2000 MRI report, she had "no loss of range of motion, strength or sensation in the upper extremities" and the disc problems created only a "5% impairment of the whole person." He further found "no objective medical support for plaintiff's ongoing complaints of pain and limitation," which he opined were "entirely unrelated to the automobile accident."

Plaintiff's medical records indicate that after the accident, she was taken to an emergency room where she reported feeling "fine," and ambulated without difficulty; she was diagnosed with "neck sprain, muscle strain," no X rays were taken, she was prescribed pain relievers and discharged a short time later. About a week later, she saw her primary care physician whose records reflect that she had "full range of motion of her head and neck," with only mild to moderate muscle tenderness, and a diagnosis of a "mild to moderate whiplash injury." Plaintiff thereafter saw an orthopedic surgeon on four occasions between February 15, 2000 and June 5, 2000. At the first visit, marked spasms and tenderness in the neck and back and limited rotation were noted, plaintiff complained of neck/back/shoulder pain and an MRI and X rays of the cervical spine were ordered. At the second visit, plaintiff's complaints of pain were again noted, she was restricted to lifting 10 pounds and the MRI report of herniated cervical discs at C5-6 and C6-7 was noted. Again at the June 1, 2000 visit, plaintiff's pain complaints were recorded, as were trigger points in the back, moderate tenderness in the head, moderate spasms in the neck and minimal tenderness in the shoulder. Only "slight limitation" of rotation and lateral bending was noted in the cervical spine and "moderate interspinous tenderness at C5-6, C6-7." "Occipital neuroglia" and "myofacial syndrome cervical" were added as diagnoses. Plaintiff's last visit, June 5, 2000, reflects marked thoracic tenderness at T10-12, very limited motion at the "thoraco-lumbar junction" and flexion limited to 50%; pain complaints, a restriction against bending or lifting and the addition of a "cervical sprain" diagnosis were recorded, as was the cessation of physical therapy. Plaintiff's physical therapy reports reflect approximately 13 sessions in the 2½ months after the accident, the last on April 11, 2000 at which plaintiff stated that she was "really feeling better"; during a follow-up call two days later where she reported "no pain" and, finally, an April 27, 2000 note indicated that plaintiff reported "no return of symptoms" and was discharged.

The orthopedic surgeon who conducted the independent medical examination on defendant's behalf also responded to a letter to plaintiff's counsel by plaintiff's orthopedic surgeon. Plaintiff's orthopedist had concluded in that letter that her herniated cervical discs (at C5-6, C6-7) and myofacial syndrome of the cervical spine with chronic spasms resulted in a permanent "60% loss of function of the cervicothoracic spine," which was directly related to this accident. In response, defendant's orthopedic surgeon concluded that plaintiff's medical records, history, MRI and exams do not support the conclusion of

plaintiff's orthopedist of a "60% loss of use" of the cervicothoracic spine as her herniated discs are "only in the cervical spine," which had "no loss of motion." Contrary to plaintiff's contentions, defendant's submissions sufficiently made a prima facie showing that she did not suffer any of the serious injuries alleged, shifting the burden to plaintiff to raise a triable issue of fact (*see Gaddy v Eyler*, 79 NY2d 955, 956-957 [1992]).

In opposing defendant's prima facie showing, plaintiff relied on the October 22, 2001 affidavit of her treating orthopedic surgeon which reflects—as did the medical records provided on the motion—that he last treated her on June 5, 2000. We agree with Supreme Court's conclusion that plaintiff's submissions in opposition to defendant's motion are insufficient to raise a triable issue of fact regarding any claimed serious injury in that they fail to offer any explanation for the significant period between the orthopedist's stated last treatment of her on June 5, 2000 and his October 22, 2001 affidavit, which was not based upon a recent examination (*see Best v Bleau*, 300 AD2d 858, 861 [2002]; *Trotter v Hart*, 285 AD2d 772, 773 [2001]; *Blanchard v Wilcox*, 283 AD2d 821, 823 [2001]; *see also Borino v Little*, 273 AD2d 262 [2000], *lv denied* 96 NY2d 704 [2001]).

Moreover, plaintiff's proof, including her medical expert and her own testimony, was deficient in failing to demonstrate any permanent loss of use of a body, organ, member, function or system that was "total," as required to satisfy this category of serious injury (*see Oberly v Bangs Ambulance*, 96 NY2d 295, 299 [2001]). Plaintiff's claims under the "permanent consequential" and "significant limitation of use" fail in any manner to explain how a *cervical* MRI revealing cervical herniated discs supports a finding of a permanent loss of function in her *thoracic* spine, or to identify any other objective or diagnostic tests utilized to support the conclusion of loss of thoracic spine function, deficiencies highlighted by defendant's medical expert (*see Toure v Avis Rent A Car Sys.*, 98 NY2d 345, 350-353 [2002]). The diagnoses of occipital neuralgia and cervical myofacial syndrome contained in the affidavit of plaintiff's expert are not explained or defined or in any manner connected to plaintiff's limitations, symptoms or loss of functions and their significance is not delineated (*see Seymour v Roe*, 301 AD2d 991, 991-992 [2003]; *see also Toure v Avis Rent A Car Sys., supra* at 353; *Dufel v Green*, 84 NY2d 795, 798 [1995]; *Temple v Doherty*, 301 AD2d 979, 981-983 [2003]). With regard to plaintiff's 90/180 claim, it is not supported by either plaintiff's own testimony or by objective medical evidence (*see Drexler v Melanson*, 301 AD2d 916, 918-919 [2003]). Plaintiff testified that she had been

employed part time as a graphic artist, only missed three weeks of work as a result of this accident and she was not prevented from performing "substantially all of the material acts" of her "customary daily activities" either at work or at home (*see* Insurance Law § 5102 [e]; *Licari v Elliot,* 57 NY2d 230, 236 [1982]; *Van Norden-Lipe v Hamilton,* 294 AD2d 749, 749 [2002]; *cf. Monk v Dupuis,* 287 AD2d 187, 190-192 [2001]). Also, her treating orthopedic surgeon made no attempt to relate his diagnoses and findings to any substantial constraints on her activities (*see Trotter v Hart, supra* at 773). Thus, defendant's motion for summary judgment dismissing the complaint was correctly granted.

With respect to plaintiff's claim that Supreme Court erred in denying her motion to renew, we find it to be without merit and also affirm that order.* Plaintiff's motion to renew was based upon facts inexplicably not offered on the prior motion, consisting of an affidavit and related medical records of plaintiff's treating orthopedic surgeon contending that he continued to treat plaintiff after June 5, 2000 and until February 8, 2002. However, that same surgeon had stated in his October 22, 2001 affidavit in opposition to defendant's original motion—which was then pending before Supreme Court—that he had last treated plaintiff on June 5, 2000 and no medical records for treatment thereafter were provided to defendant or submitted in opposition to that motion. Having demonstrated no reasonable justification for failing to place this available and patently relevant information before the court on the original application, plaintiff's motion to renew was properly denied (*see* CPLR 2221 [e] [2], [3]; *Spa Realty Assoc. v Springs Assoc.,* 213 AD2d 781, 783 [1995]).

Mercure, J.P., Crew III, Rose and Kane, JJ., concur. Ordered that the orders are affirmed, with costs.