■ PAUL S. PARKS, Appellant, v ROBERT R. MICLETTE, JR., et al., Respondents. [838 NYS2d 717]—

Mercure, J.P. Appeal from an order of the Supreme Court (Reilly, Jr., J.), entered May 8, 2006 in Schenectady County, which, inter alia, granted defendants' motion for summary judgment dismissing the complaint.

In March 2002, plaintiff and defendant Robert R. Miclette, Jr. were involved in a multicar accident on Interstate 90 in Onondaga County. Miclette was driving defendant Peggy L. Senecal's vehicle when a tractor trailer allegedly entered his lane of travel, causing Miclette to strike the center guard rail and rebound back into traffic. The disabled vehicle was then struck by plaintiff's vehicle. Plaintiff thereafter commenced this action against Miclette and Senecal, alleging that he suffered concussive and back injuries that constituted serious injuries within the meaning of Insurance Law § 5102 (d). Specifically, plaintiff asserted that he suffered a permanent consequential limitation of use of a body organ or member, a significant limitation of use of a body function or system, and that he was unable to perform substantially all of his usual and customary daily activities for 90 of the first 180 days following the accident. Supreme Court granted defendants' subsequent motion for summary judgment dismissing the complaint and plaintiff now appeals.

We affirm. To meet their initial burden of demonstrating that plaintiff did not sustain a serious injury under any of the statutory categories set forth in Insurance Law § 5102 (d) (*see Pommells v Perez*, 4 NY3d 566, 574 [2005]; *Toure v Avis Rent A Car Sys.*, 98 NY2d 345, 352 [2002]), defendants submitted records and reports of plaintiff's treating physicians, as well as an affidavit from the president of plaintiff's former employer. Contrary to plaintiff's argument, such "documents [are evidence]

upon which [a] defendant may properly rely to make [a] prima facie showing of entitlement to judgment as a matter of law" (*Tuna v Babendererde*, 32 AD3d 574, 575 [2006]; *see Franchini v Palmieri*, 1 NY3d 536, 537 [2003]; *Drexler v Melanson*, 301 AD2d 916, 916 [2003]). Plaintiff's medical records from the period immediately following the accident indicate that he had struck his head during the collision but was initially to be discharged from the emergency room after tests there came back normal. A subsequent battery of tests, including X rays and CT scans, was performed after plaintiff fainted—causing him to fall and hit his head on a table and floor—and then began complaining of neck pain. The results of the second round of tests were negative and plaintiff's discharge instructions indicated that he was in "satisfactory condition" but fitted with an Aspen collar for his neck pain. Records from plaintiff's next three doctors' visits, in late March and April 2002, noted a postconcussive state that was expected to improve, a "[c]ervical strain/sprain," "mild" vertebrae tenderness, some "slight" muscle tenderness and a limited range of motion that was "near normal." Plaintiff was cleared to return to light activity at work in March 2002 and authorized to remove his cervical collar in April 2002.

In May 2002, plaintiff commenced treatment with David Hart, who noted plaintiff's complaints of vertigo, found plaintiff's cervical range of motion to be limited in all directions, and observed the presence of "a moderate degree" of muscle spasm. One month later, however, Hart found plaintiff's cervical range of motion to be only "mildly limited," that there was only "minimal" neck tenderness and that the muscle spasms were no longer present. Hart also recorded plaintiff's statements that he was feeling "better and better," that his vertigo bothered him only when lying down, that he was able to resume running and jogging and that his headaches did not warrant the bother of going to the store to buy painkillers. Hart concluded that plaintiff was doing "considerably better" and that he could return to sedentary work. Defendants also provided an affidavit from plaintiff's former employer indicating that plaintiff's duties were primarily sedentary and, in any event, he was in the process of being terminated from his job at the time of the accident.

Inasmuch as minor, mild or slight limitations in range of motion or mere subjective complaints of pain will not satisfy the serious injury threshold (*see e.g. Pianka v Pereira*, 24 AD3d 1084, 1086 [2005]; *Gonzalez v Green*, 24 AD3d 939, 940-941 [2005]), the burden shifted to plaintiff to raise a triable issue of

fact on the three claimed categories of serious injury through the use of objective, medical proof (*see Toure v Avis Rent A Car Sys., supra* at 350, 353; *Tuna v Babendererde, supra* at 576-577). In that regard, we note that to establish a claim under the permanent, consequential limitation or significant limitation of use categories, " 'the medical [proof] submitted by plaintiff must contain objective, quantitative evidence with respect to diminished range of motion or a qualitative assessment comparing plaintiff's *present* limitations to the normal function, purpose and use of the affected body organ, member, function or system' " (*Pugh v DeSantis*, 37 AD3d 1026, 1029 [2007], quoting *John v Engel*, 2 AD3d 1027, 1029 [2003]). In addition, the 90/180-day category requires the presentation of "objective evidence of 'a medically determined injury or impairment of a non-permanent nature' " (*Toure v Avis Rent A Car Sys., supra* at 357, quoting Insurance Law § 5102 [d]).

In opposition, plaintiff relies primarily upon his medical records, an affirmation from Hart and his own affidavit. Notably, none of the records—other than those from plaintiff's treatment with Hart—contains qualitative or quantitative descriptions of any limitation in plaintiff's range of motion or daily activities, and the diagnostic test results contained therein show no evidence of abnormality. Hart's record from May 2002 does indicate the presence of muscle spasms and positive "sway" on "Romberg testing," as well as specific, quantitative limitations in plaintiff's range of motion and notes restrictions in plaintiff's ability to work and exercise. Neither the record nor Hart's subsequent affirmation, however, sets forth the objective tests used to determine the spasms or supports the findings regarding plaintiff's physical limitations and restrictions in his daily activities (*see Toure v Avis Rent A Car Sys., supra* at 357-358; *Tuna v Babendererde, supra* at 577; *Pianka v Pereira, supra* at 1086). Moreover, Hart's record from June 2002 indicates that plaintiff experienced no muscle spasms, that the vertigo troubled him only when lying down, and that any limitations or tenderness were mild and minor at that point. The affirmation and a subsequent record indicate that Hart next treated plaintiff 3¹/₂ years later and concluded that he suffered from neck and headache pain, "abnormal" range of motion in his neck and, rarely, from vertigo, all of which were permanent. These documents do not, however, set forth any quantitative or qualitative assessment of these allegedly persisting conditions or demonstrate that they are presently more than " 'minor, mild or slight' " (*Toure v Avis Rent A Car Sys., supra* at 353, quoting *Licari v Elliott*, 57 NY2d 230, 236 [1982]; *see Pugh v DeSantis, supra* at 1029).

Indeed, while Hart's affirmation does provide explanations of the objective basis for the initial diagnosis of vertigo and for the gap in plaintiff's treatment (*see Pommells v Perez*, 4 NY3d 566, 577 [2005], *supra*), it does not explain why the physical limitation and the vertigo—which the June 2002 medical records described as "mild" and "rare," respectively—were suddenly significant or, as Supreme Court noted, resolve the contradictions between Hart's June 2002 opinion that plaintiff was "considerably better" and expected to improve, and his present opinion that plaintiff is permanently disabled despite reported increases in his physical capabilities. Finally, the description in Hart's affirmation and plaintiff's affidavit of plaintiff's inability to perform his customary daily activities for the first 90 days after the accident is not supported by medical evidence that is independent of plaintiff's subjective complaints of pain. In any event, the claims regarding the restrictions on plaintiff's daily activities are largely belied both by plaintiff's reported description of his physical capabilities in Hart's June 2002 medical records and the affidavit from his employer describing the circumstances under which plaintiff lost his job, which plaintiff does not dispute.

In short, because the evidence relied upon by plaintiff is insufficient to create a triable issue of fact with respect to any of the statutory categories of serious injury, Supreme Court properly dismissed the complaint (*see Tuna v Babendererde*, 32 AD3d 574, 577 [2006], *supra*; *John v Engel, supra* at 1028-1030; *Adams v Pagano*, 1 AD3d 779, 780-781 [2003]; *Drexler v Melanson*, 301 AD2d 916, 918-919 [2003], *supra*).

Crew III, Rose and Lahtinen, JJ., concur. Ordered that the order is affirmed, with costs.