■ ROBERTA M. FLANDERS et al., Respondents, v NATIONAL GRANGE MUTUAL INSURANCE COMPANY, Appellant. [1 NYS3d 542]—

Garry, J. Appeal from an order of the Supreme Court (Reynolds Fitzgerald, J.), entered May 31, 2014 in Broome County, which denied defendant's motion for summary judgment dismissing the complaint.

In August 2006, plaintiff Roberta M. Flanders (hereinafter plaintiff) was rear-ended while driving her car. After settling an action against the driver of the car that hit her, plaintiff and her husband, derivatively, commenced this action against defendant seeking supplementary underinsured motorist coverage, alleging that, as a result of the accident, she suffered a serious injury as defined in Insurance Law § 5102 (d). Defendant moved for summary judgment dismissing the complaint, asserting that, based on a report completed following an August 2011 independent medical examination, plaintiff did not suffer a serious injury under the claimed permanent consequential limitation of use, significant limitation of use or 90/180-day categories. Supreme Court denied the motion, finding that plaintiffs had raised issues of fact relative to the category of significant limitation of use. Defendant appeals.

As the proponent of the motion for summary judgment, defendant bore the burden of establishing through the submission of competent medical evidence that plaintiff did not suffer a serious injury as a result of the accident (*see Toure v Avis Rent A Car Sys.*, 98 NY2d 345, 352 [2002]; *Raucci v Hester*, 119 AD3d 1044, 1044 [2014]). Defendant primarily relied on two reports by neurosurgeon Michael Shende. The first report, issued in July 2011, was based solely upon review of plaintiff's medical records, and the second was issued thereafter in August 2011 following a physical examination of plaintiff. In essence, Shende opined that plaintiff had no objective neurological impairments, that she suffered from preexisting lumbar and cervical spondylolisthesis, and that while there was some evidence of

preexisting migraine headaches warranting treatment by a neurologist, the records did not demonstrate that she suffered a head injury in the accident that could have caused post-concussion syndrome or her "limited memory problems." While noting certain weaknesses in the submission, Supreme Court properly held that the evidence proffered by defendant's expert was sufficient to demonstrate a prima facie case for summary judgment in defendant's favor, with issues of weight and credibility reserved for the factfinder. We agree that defendant met its initial burden (*see Pommells v Perez*, 4 NY3d 566, 580 [2005]; *Clark v Basco*, 83 AD3d 1136, 1138 [2011]), thus shifting the burden to plaintiffs to raise an issue of fact with "competent proof based upon objective medical findings and tests to support any alleged serious injuries and connect them to the accident" (*Davis v Cottrell*, 101 AD3d 1300, 1301 [2012]; *see Parks v Miclette*, 41 AD3d 1107, 1109-1110 [2007]).

Plaintiff's initial course of medical treatment was primarily aimed at addressing her orthopedic injuries and, although these treatment records are available within the record, plaintiffs submitted no expert medical proof to refute the opinions expressed by defendant's medical expert relative to these injuries. Plaintiffs further submit extensive arguments as to alleged weaknesses and inconsistencies in defendant's expert proof. However, plaintiffs' unsupported assertions and criticisms of the quality of defendant's submissions do not constitute the requisite competent medical proof. Accordingly, our legal review is limited to the issues posed and the quantum of evidence proffered by plaintiffs' neuropsychological expert, Nathan Hare.

Plaintiff was referred to Hare by her neurologist for a neuropsychological evaluation of potential post-concussion syndrome. In July 2007, Hare conducted this evaluation and concluded, among other things, that plaintiff suffered from "mild to moderate cerebral dysfunction . . . characteristic of postconcussive syndrome." Thereafter, in opposition to defendant's summary judgment motion, plaintiffs submitted an affidavit from Hare that incorporated by reference a December 2011 report in which Hare discussed his neuropsychological evaluation and his review of the report completed by defendant's expert. In these documents, Hare stated that, in the course of his examination of plaintiff, he had administered a battery of tests including, among others, the WAIS-3, Stroop Test, Brief Test of Attention, Booklet Category Test, Grooved Pegboard Test, and a WMS-III. Based upon his clinical review and testing, Hare formed the professional opinion that plaintiff demon-

strated "psychometrically documented deficits in . . . cognitive function [that] included decreased attention/concentration . . . , mild impairment of concept recognition and development . . . , decreased fine motor coordination . . . and reduced memory function" in specifically identified areas. These deficits, in Hare's view, placed plaintiff in the impaired range "in a variety of areas involving cognitive function" and were sufficiently severe to constitute serious injury within the meaning of Insurance Law § 5102 (d). Based upon his clinical experience, Hare opined that plaintiff's deficits as revealed by the objective testing were consistent with her subjective complaints of "significant life impairment in a variety of areas [related to] cognitive function."

Hare further opined, based upon his clinical experience, that plaintiff's impairment was causally related to the impact of her head against the headrest during the accident and the significant chronic muscular-skeletal pain that she experienced thereafter. Absent evidence that plaintiff had suffered from cognitive impairments prior to the accident, and in view of her report that she had not, it was both reasonable and legally acceptable for Hare to attribute the cause of the decrease in her cognitive function to the motor vehicle collision (*see Krivit v Pitula*, 79 AD3d 1432, 1434 [2010]). Finally, Hare opined that plaintiff's condition was "not transient," as his testing was performed approximately 11 months following the date of plaintiff's traumatic injury.

Hare's December 2011 report summarizes the results of the multiple psychometric tests administered during the neuropsychological evaluation. More detailed results are contained in the evaluation, which specifically documents the results of each test in quantitative terms and further determines the degree of plaintiff's impairment in each tested area of function by comparing her performance to average norms. Hare's affidavit and report summarizing the results of his neuropsychological evaluation thus meet the established legal standard for expert testimony substantiating a serious injury claim (*see Toure v Avis Rent A Car Sys.*, 98 NY2d at 350-351).* Viewing the evidence in the light most favorable to plaintiffs, as we must (*see id.* at 353), we find that plaintiffs met their burden in opposi-

---

* Notably, and in contrast, defendant's expert conducted no psychometric testing of his own, nor did he opine that the cognitive impairments that Hare identified predated the accident; instead, he did no more than summarily dismiss Hare's opinions based upon his own conclusions that plaintiff had preexisting headaches and orthopedic issues, as well as his apparent skepticism as to the mechanism of her injury.

tion to defendant's motion by providing the requisite "objectively measured quantum of evidence necessary to satisfy [the significant limitation of use] category of serious injury" (*Sellitto v Casey*, 268 AD2d 753, 755 [2000]; *see Krivit v Pitula*, 79 AD3d at 1433-1434; *Mrozinski v St. John*, 304 AD2d 950, 951-952 [2003]; *Jordan v Goldstein*, 129 AD2d 616, 617 [1987]; *compare Bissonette v Compo*, 307 AD2d 673, 674 [2003]; *Chapman v Capoccia*, 283 AD2d 798, 800 [2001]).

In regard to the degree or severity of impairment, we note that Hare's report documents impairments in a variety of areas and describes only one of them as mild. He further opines that, based on their continued existence almost a full year after the accident, they were "not transient." Multiple mild cognitive impairments may be sufficient to demonstrate the existence of serious injury in the significant limitation of use category when they result in a combined impact that limits one's ability to perform daily life functions (*see Viscusi v Ostrowski*, 25 Misc 3d 1213[A], 2007 NY Slip Op 52652[U], *4 [Sup Ct, Schenectady County 2007], *affd* 53 AD3d 965, 965-966 [2008]).

Finally, although there was a period of time during which plaintiff did not engage in cognitive therapy treatment, she explained that she had discontinued the therapy while she engaged in grief counseling following the death of her mother and had used "memory aids and organizational skills" to function. Several years later, she experienced an episode of severe memory loss that could have had a serious adverse impact on her family, and she thereafter resumed weekly treatments. Taken together with Hare's uncontradicted expert opinion that her injury was not transient, we find that, while these circumstances may affect the weight a jury chooses to give to this aspect of the proof, they cannot serve to disqualify plaintiffs, as a matter of law, from demonstrating that plaintiff suffered from a chronic injury and resulting significant limitation of use. Instead, the conflicting evidence "gives rise to a dispute among experts for the jury to decide" (*Haddadnia v Saville*, 29 AD3d 1211, 1212 [2006]). Accordingly, we affirm Supreme Court's order.

Egan Jr. and Devine, JJ., concur.

Lynch, J. (dissenting). We agree with the majority's conclusion that defendant met its initial burden on the motion for summary judgment and that plaintiffs' submissions did not constitute the requisite competent medical proof with regard to the orthopedic injuries of plaintiff Roberta M. Flanders (hereinafter plaintiff). Because we do not believe that plaintiffs raised a material question of fact with regard to plaintiff's alleged cognitive injuries, we respectfully dissent.

A plaintiff seeking to establish a claim under the significant limitation of use categories of serious injury must provide "objective, quantitative evidence with respect to diminished range of motion or a qualitative assessment comparing [the] plaintiff's present limitations to the normal function, purpose and use of the affected body organ, member, function or system" (*Clark v Basco*, 83 AD3d 1136, 1138 [2011] [internal quotation marks and citations omitted]; *see Parks v Miclette*, 41 AD3d 1107, 1110 [2007]). If the claimed limitation is mild or slight, it is not a serious injury as defined by Insurance Law § 5102 (d) (*see DeHaas v Kathan*, 100 AD3d 1057, 1058 [2012]; *Womack v Wilhelm*, 96 AD3d 1308, 1311 [2012]; *Parks v Miclette*, 41 AD3d at 1110-1111; *Simpson v Feyrer*, 27 AD3d 881, 882-883 [2006]). Here, plaintiffs have presented no objective evidence of a head injury (*compare Viscusi v Ostrowski*, 25 Misc 3d 1213[A], 2007 NY Slip Op 52652[U], *1 [Sup Ct, Schenectady County 2007], *affd* 53 AD3d 965, 965-966 [2008] [the plaintiff lost consciousness]) and, while plaintiff explains why she stopped cognitive therapy, she does not provide a reasonable explanation for failing to resume such therapy for more than four years (*see Pommells v Perez*, 4 NY3d 566, 574 [2005]). By his conclusory affidavit, plaintiff's psychologist, Nathan Hare, identifies certain cognitive deficits discovered during the neuropsychological testing conducted in 2007, characterizes one such deficit as mild, but otherwise fails to provide any quantitative or qualitative comparison of plaintiff's condition to normal function (*see Palmeri v Zurn*, 55 AD3d 1017, 1019 [2008]; *Simpson v Feyrer*, 27 AD3d at 883; *Serrano v Canton*, 299 AD2d 703, 704-705 [2002]; *compare Viscusi v Ostrowski*, 25 Misc 3d 1213[A], 2007 NY Slip Op 52652[U], *3-4 [2007] [the plaintiff's expert explained the tests in detail and opined that the combination of several mild deficiencies had a significant effect on the plaintiff's ability to function]). As Hare's report was generated more than four years after he tested plaintiff, we find his opinion deficient with regard to the "not transient" nature of plaintiff's condition (*see John v Engel*, 2 AD3d 1027, 1028-1029 [2003]).

In our view, because plaintiffs failed to establish the existence of a genuine factual issue with regard to whether plaintiff sustained a serious injury as a result of the accident, Supreme Court should have granted defendant's motion and dismissed the complaint.

Lahtinen, J., concurs. Ordered that the order is affirmed, with costs.