OPINION OF THE COURT
 

 Graffeo, J.
 

 These three cases examine the nature and extent of qualitative, objective medical proof necessary for a plaintiff to meet the “serious injury” threshold under the No-Fault Law. We conclude that plaintiffs Toure and Manzano have satisfied their burden under Insurance Law § 5102 (d),
 
 [1]
 
 but plaintiff Nitti has not.
 

 This Court has long recognized that the “legislative intent underlying the No-Fault Law was to weed out frivolous claims and limit recovery to significant injuries”
 
 (Dufel v Green,
 
 84 NY2d 795, 798 [1995];
 
 see also Licari v Elliott,
 
 57 NY2d 230, 234-235 [1982]). As such, we have required objective proof of a plaintiffs injury in order to satisfy the statutory serious injury threshold (see
 
 e.g. Dufel,
 
 84 NY2d at 798;
 
 Lopez v Senatore,
 
 65 NY2d 1017, 1020 [1985]); subjective complaints alone are not sufficient (see
 
 e.g. Gaddy v Eyler,
 
 79 NY2d 955, 957-958 [1992];
 
 Scheer v Koubek,
 
 70 NY2d 678, 679 [1987]).
 

 In order to prove the extent or degree of physical limitation, an expert’s designation of a numeric percentage of a plaintiffs loss of range of motion can be used to substantiate a claim of serious injury (see
 
 e.g. Dufel,
 
 84 NY2d at 798;
 
 Lopez,
 
 65 NY2d at 1020). An expert’s
 
 qualitative
 
 assessment of a plaintiffs condition also may suffice, provided that the evaluation has an objective basis and compares the plaintiffs limitations to the normal function, purpose and use of the affected body organ, member, function or system (see
 
 Dufel,
 
 84 NY2d at
 
 *351
 
 798). When supported by objective evidence, an expert’s qualitative assessment of the seriousness of a plaintiffs injuries can be tested during cross-examination, challenged by another expert and weighed by the trier of fact. By contrast, an expert’s opinion unsupported by an objective basis may be wholly speculative, thereby frustrating the legislative intent of the No-Fault Law to eliminate statutorily-insignificant injuries or frivolous claims. We now apply these principles to three different cases.
 

 Toure v Avis Rent A Car Systems, Inc.
 

 Plaintiff commenced this action to recover damages for neck and back injuries allegedly suffered when the vehicle he was driving was struck by an automobile operated by defendant Susan Duncan and owned by defendant Avis Rent A Car Systems, Inc. Following joinder of issue, plaintiff served a bill of particulars alleging that he suffered a “permanent consequential limitation of use of a body organ or member” and a “significant limitation of use of a body function or system,” two of the statutory categories defining “serious injury” under Insurance Law § 5102 (d).
 
 [2]
 
 Defendants then moved for summary judgment dismissing the complaint on the ground that plaintiff had not sustained a serious injury within the meaning of the No-Fault Law.
 
 [3]
 

 In support of their motion, defendants submitted various medical records of plaintiff and an affirmation from a neurologist, Dr. Ralph Olson. Dr. Olson conducted a physical examination of plaintiff and reviewed plaintiffs medical records, including reports from plaintiffs chiropractor and reports of x-rays and an MRI of plaintiffs back. He concluded that a “clinical examination of the central and peripheral nervous system, cervical, dorsal and lumbosacral spine fails to reveal any objective abnormalities to indicate any residual disability” and that “[flrom a neurologic standpoint [plaintiff] has recovered from his various injuries.”
 

 In opposition, plaintiff submitted his own affidavit and an affirmation from Dr. Joseph Waltz, a neurosurgeon who had
 
 *352
 
 treated him for approximately a year and a half prior to defendants’ motion. Plaintiff averred that, even three years after the accident, he could lift only “moderate weight objects with significant pain,” experienced pain attempting to bend and use his lower back, was unable to sit for more than half an hour without “great discomfort,” could not walk moderate distances and had neck pain when turning his head. Plaintiff further claimed that, due to his alleged physical limitations, he hired someone to lift heavy objects when deliveries were made to his business.
 

 Based on his review of medical records from plaintiff’s prior health care providers, Dr. Waltz noted that an earlier MRI test of plaintiff’s cervical spine — taken one month after the accident — revealed one bulging and two herniated discs. As a consequence, he had plaintiff undergo additional testing — a CT scan of his cervical spine and an MRI of his lumbar spine. According to Dr. Waltz, the CT scan indicated “significantly bulging possibly herniated discs” and the lumbar MRI revealed “significant bulging discs.” While conducting a physical examination, Dr. Waltz observed that plaintiff “had paraspinous muscle spasms in the lumbosacral area and a decreased range of motion in his lumbar spine.” He opined to a reasonable degree of medical certainty that plaintiff's disc pathology was caused by the motor vehicle accident and that plaintiffs injuries are “permanent and result in restriction of use and activity of the injured areas and permanent limitation of his spine and peripheral nervous system.” Moreover, Dr. Waltz related this assessment to plaintiffs complaints of difficulty in sitting, standing and walking for extended periods of time and plaintiffs inability to lift heavy objects at work by concluding that these limitations are “a natural and expected medical consequence of his injuries.”
 

 Based on these submissions, Supreme Court granted defendants’ motion and dismissed plaintiffs complaint. The Appellate Division affirmed, with two Justices dissenting. Plaintiff appealed to this Court as of right.
 

 Although Dr. Olson’s affirmation was sufficient to meet defendants’ initial burden to establish a prima facie case that plaintiffs alleged injuries did not meet the serious injury threshold under the No-Fault Law
 
 (see e.g. Gaddy,
 
 79 NY2d at 956-957), plaintiffs proffered evidence raises issues of material fact as to whether he sustained a “permanent consequential limitation of use of a body organ or member” or a “significant limitation of use of a body function or system.”
 

 
 *353
 
 For these two statutory categories, we have held that “[w]hether a limitation of use or function is ‘significant’ or ‘consequential’ (i.e., important * * *) relates to medical significance and involves a comparative determination of the degree or qualitative nature of an injury based on the normal function, purpose and use of the body part” (Dufel, 84 NY2d at 798).
 
 [4]
 
 While Dr. Waltz’s affirmation does not ascribe a specific percentage to the loss of range of motion in plaintiff’s spine, he sufficiently describes the “qualitative nature” of plaintiffs limitations “based on the normal function, purpose and use of the body part”
 
 (id,.).
 
 Dr. Waltz further attributes the limitations in plaintiffs physical activities to the nature of the injuries sustained by opining that plaintiffs “difficulty in sitting, standing or walking for any extended period of time and his inability to lift heavy boxes at work are a natural and expected medical consequence of his injuries”
 
 (see Melino v Lauster,
 
 195 AD2d 653, 655 [3d Dept],
 
 affd
 
 82 NY2d 828 [1993]).
 

 We cannot say that the alleged limitations of plaintiffs back and neck are so “minor, mild or slight” as to be considered insignificant within the meaning of Insurance Law § 5102 (d)
 
 (Licari,
 
 57 NY2d at 236;
 
 see also Gaddy,
 
 79 NY2d at 957;
 
 Scheer,
 
 70 NY2d at 679). As our case law further requires, Dr. Waltz’s opinion is supported by objective medical evidence, including MRI and CT scan tests and reports, paired with his observations of muscle spasms during his physical examination of plaintiff. Considered in the light most favorable to plaintiff, this evidence was sufficient to defeat defendants’ motion for summary judgment
 
 (see Lopez,
 
 65 NY2d at 1020). Given this ruling, we need not pass on plaintiffs remaining claim under section 5102 (d).
 

 Manzano v O’Neil
 

 After her vehicle was rear-ended by an automobile operated by defendant, plaintiff and her husband initiated this lawsuit alleging that she sustained a serious injury pursuant to Insurance Law § 5102 (d), specifically, a “permanent consequential limitation of use of a body organ or member.” Prior to trial, the parties stipulated to defendant’s liability but agreed to litigate
 
 *354
 
 the issue of whether plaintiff sustained a serious injury under the No-Fault Law.
 

 Plaintiff testified that after the accident, she was taken to a hospital because of pain in her lower back and “tingling” in her neck and spine. She was released that same day. When her pain persisted, she sought treatment from various health care providers and attended physical therapy. Despite these measures, plaintiff described her condition by stating: “I can no longer do heavy lifting of any kind. I cannot shovel the driveway like I used to. I don’t clean the house like I used to. I can’t carry the vacuum cleaner. I can’t pick up my children.” Plaintiff’s husband provided similar testimony regarding her limitations.
 

 Dr. John Cambareri, an orthopedic surgeon who treated plaintiff on four occasions, testified on her behalf. On plaintiff’s first visit, he conducted an orthopedic examination of her neck and lower back. As a result of this examination, he found that plaintiff had tenderness in her neck and lower back as well as “discomfort with extremes of motion of her neck.” He diagnosed plaintiff as having a cervical and lumbosacral sprain and opined that this injury was consistent with a rear-end collision. In light of complaints of persistent pain, Dr. Cambareri subsequently referred plaintiff for an MRI scan of her cervical and lumbosacral spine. Based on his review of the MRI films, which were admitted into evidence, he concluded that plaintiff suffered two herniated discs in her cervical spine. He further opined that this injury was consistent with plaintiff’s complaints regarding the physical limitations of her neck and back. Dr. Cambareri also stated that plaintiffs injury was permanent, a conclusion founded on plaintiffs “history, physical examination, [and] the review of the MRI scan.”
 

 At the conclusion of plaintiffs proof, defendant moved for a directed verdict primarily on the ground that plaintiff failed to meet her burden of proving a prima facie case of serious injury. Supreme Court reserved judgment on the motion. Defendant then rested without calling any witnesses. Subsequently, the jury awarded plaintiff $70,000 in damages.
 

 Defendant renewed her previous motion and moved to set aside the verdict. Supreme Court denied both motions. Defendant then sought to correct or vacate the judgment, arguing that the amount of prejudgment interest due was improperly computed. That motion also was denied. The Appellate Division reversed the judgment and dismissed the complaint, hold
 
 *355
 
 ing that it was error to deny defendant’s motion to set aside the verdict because plaintiff failed to establish a serious injury as a matter of law. Plaintiff was granted leave to appeal by this Court. We now reverse.
 

 In this case, plaintiff presented the testimony of her treating physician, Dr. Cambareri, who opined that plaintiff suffered two herniated cervical discs as a result of the automobile accident. His conclusion was supported by objective evidence introduced at trial, namely, the MRI films that he interpreted. Although this medical expert did not assign a quantitative percentage to the loss of range of motion in plaintiff’s neck or back, he described the qualitative nature of plaintiff’s limitations based on the normal function, purpose and use of her body parts. In particular, Dr. Cambareri correlated plaintiff’s herniated discs with her inability to perform certain normal, daily tasks. These limitations are not so insignificant as to bar plaintiff’s recovery under the No-Fault Law
 
 (see Licari,
 
 57 NY2d at 236). Viewing the evidence in the light most favorable to plaintiff, it cannot be said that there is no valid line of reasoning and permissible inferences that could possibly lead rational persons to the conclusion reached by the jury
 
 (see Par-kin v Cornell Univ.,
 
 78 NY2d 523, 526 [1991]).
 

 Defendant further contends that plaintiff failed to establish a permanent consequential limitation of use because the testimony of her expert was based on an examination that was conducted more than four years prior to trial. Defendant’s argument is not persuasive. Dr. Cambareri testified that at the time of his last examination of plaintiff, he concluded that plaintiff’s injuries were permanent and there was no benefit in her continuing to seek medical treatment for this condition. Defendant presented no medical evidence to the contrary. Defendant’s remaining contentions are either unpreserved or without merit.
 

 Nitti v Clerrico
 

 Plaintiff brought this personal injury action after she sustained injuries as a passenger in a vehicle struck by defendants’ car. In her bill of particulars, plaintiff alleged that she suffered a serious injury as defined by Insurance Law § 5102 (d) under the following categories, among others: “significant limitation of use of a body function or system” and “a medically determined injury or impairment of a non-permanent nature which prevents the injured person from performing substantially all of the material acts which constitute such
 
 *356
 
 person’s usual and customary daily activities for not less than ninety days during the one hundred eighty days immediately following the occurrence of the injury or impairment.”
 

 At trial, plaintiff described the back pain she experienced due to the accident and how, as a result, she was unable to return to work on a consistent basis for approximately six months. She testified that during this time, she was unable to participate in many of the daily activities that she had engaged in prior to the accident, including exercising and household chores.
 

 Plaintiff further presented the testimony of Dr. Daniel Patriarco, a chiropractor who twice examined her in connection with an independent evaluation. On plaintiffs first visit, he performed an examination of plaintiffs cervical and lumbar spine. At some point during this exam, Dr. Patriarco detected a spasm “in the right cervical spine which radiated into the shoulders.” Additionally, he conducted several tests from which he concluded that plaintiff had restricted range of motion in her back and neck. However, on cross-examination, he conceded that these tests were subjective in nature as they were dependent, at least in part, on plaintiffs complaints of pain. Ultimately, he diagnosed plaintiff with a “lumbosacral, sacroiliac and cervical sprain/strain with some secondary pain in the back of the head” and that she had a “mild partial disability,” which was caused by the motor vehicle accident. As a result, Dr. Patriarco restricted plaintiff from lifting more than 20 pounds and recommended further chiropractic care.
 

 Dr. Patriarco testified that he next examined plaintiff six months later. Once again, he conducted a physical examination of plaintiff. He also reviewed a report of an MRI of plaintiffs spine, which report was not introduced into evidence. Based on his examination of plaintiff and the MRI report, he opined that plaintiff “sustained an L4-5 intervertebral disk disorder with associated neuritis, which was further complicated by a congenital anomaly,” which would prevent her from exercising and other activities. He again correlated this diagnosis to the accident.
 

 At the close of plaintiffs case, defendants moved for a directed verdict on the grounds that plaintiff failed to establish a prima facie case of negligence and serious injury. As to their serious injury argument, defendants contended that Dr. Patriarco’s opinions were not supported by objective medical proof. Supreme Court denied the motion on both grounds. Defendants
 
 *357
 
 then presented their case, which consisted of three witnesses but no medical testimony.
 

 The jury found that defendants were negligent and that plaintiff sustained a serious injury under the 90/180 category, but not under the significant limitation category, and awarded plaintiff $45,000. In their motion to set aside the verdict, defendants asserted that Dr. Patriarco’s testimony was legally insufficient to support a finding of serious injury because it lacked an objective medical basis. Supreme Court denied the motion, and the Appellate Division, in a three-two decision, affirmed the judgment entered in plaintiff’s favor after the denial of the motion to set aside the verdict. This appeal as of right ensued.
 

 This case concerns a different category of serious injury — the “90/180” category. Although this statutory category lacks the “significant” and “consequential” terminology of the two categories at issue in
 
 Toure
 
 and
 
 Manzano,
 
 a plaintiff must present objective evidence of “a medically determined injury or impairment of a non-permanent nature” (Insurance Law § 5102 [d];
 
 see also Licari,
 
 57 NY2d at 236-239).
 
 [5]
 
 Here, the issue is simply whether plaintiff offered sufficient objective medical evidence to establish a qualifying injury or impairment. Because plaintiff failed to do so, we reverse the order of the Appellate Division.
 

 Plaintiff contends that the testimony of her chiropractor, Dr. Patriarco, regarding his detection of a back spasm and his review of an MRI report, together with the testimony regarding the limited range of motion in her neck and spine, are sufficient to support the jury’s finding that she suffered a serious injury. Based on the proof adduced at trial, we disagree.
 

 Although medical testimony concerning observations of a spasm can constitute objective evidence in support of a serious injury, the spasm must be objectively ascertained. This requirement was not satisfied by the testimony of plaintiff’s expert that he detected a spasm, where he did not, for example, indicate what test, if any, he performed to induce the spasm. Furthermore, Dr. Patriarco testified on cross-examination that the tests he administered to reach his conclusion regarding plaintiff’s limitation of motion were subjective in nature as
 
 *358
 
 they relied on plaintiffs complaints of pain. Nor did the MRI report he mentioned constitute objective proof.
 
 Toure
 
 and
 
 Manzano
 
 recognize that an expert’s conclusion based on a review of MRI films and reports can provide objective evidence of a serious injury. In this case, however, the witness merely mentioned an MRI report without testifying as to the findings in the report. Moreover, the MRI report was not introduced into evidence, thus foreclosing cross-examination. Nor did Dr. Patriarco testify that the underlying MRI film supported his diagnosis of an “L4-5 intervertebral disk disorder.” Given the inadequacy of the objective medical proof supporting the opinion of plaintiffs expert, defendants’ motion to set aside the verdict should have been granted. Plaintiffs remaining arguments are without merit.
 

 Accordingly, in
 
 Toure v Avis Rent A Car Systems, Inc.,
 
 the order of the Appellate Division should be reversed, with costs, and defendants’ motion for summary judgment denied. In
 
 Manzano v O’Neil,
 
 the order of the Appellate Division should be reversed, with costs, and the case remitted to the Appellate Division for consideration of the facts and issues raised but not determined on the appeal to that Court. In
 
 Nitti v Clerrico,
 
 the order of the Appellate Division should be reversed, with costs, and the complaint dismissed.
 

 Chief Judge Kaye and Judges Smith, Levine, Ciparick, Wesley and Rosenblatt concur.
 

 In
 
 Toure v Avis Rent A Car Sys:
 
 Order reversed, etc.
 

 In
 
 Manzano v O’Neil:
 
 Order reversed, etc.
 

 In
 
 Nitti v Clerrico:
 
 Order reversed, etc.
 

 [1]
 

 . Insurance Law § 5102 (d) defines the term “serious injury” as “a personal injury which results in death; dismemberment; significant disfigurement; a fracture; loss of a fetus; permanent loss of use of a body organ, member, function or system; permanent consequential limitation of use of a body organ or member; significant limitation of use of a body function or system; or a medically determined injury or impairment of a non-permanent nature which prevents the injured person from performing substantially all of the material acts which constitute such person’s usual and customary daily activities for not less than ninety days during the one hundred eighty days immediately following the occurrence of the injury or impairment.”
 

 [2]
 

 . Based on
 
 Oberly v Bangs Ambulance
 
 (96 NY2d 295 [2001]), plaintiff withdrew his additional claim of a “permanent loss of use of a body organ, member, function or system.”
 

 [3]
 

 . Although plaintiff now objects to the form of some of the exhibits submitted in support of defendants’ motion for summary judgment, he did not challenge their inclusion before the motion court and therefore failed to preserve this argument for our review
 
 (see Hambsch v New York City Tr. Auth.,
 
 63 NY2d 723, 725 [1984]).
 

 [4]
 

 .
 
 For this reason, the Appellate Divisions have held that a diagnosis of a bulging or herniated disc, by itself, does not constitute a serious injury
 
 (see e.g. Manzano v O’Neil,
 
 285 AD2d 966 [4th Dept 2001],
 
 read on other grounds
 
 98 NY2d 345 [2002];
 
 Rose v Furgerson,
 
 281 AD2d 857, 859 [3d Dept],
 
 lv denied
 
 97 NY2d 602 [2001];
 
 Pierre v Nanton,
 
 279 AD2d 621 [2d Dept 2001];
 
 Noble v Ackerman,
 
 252 AD2d 392, 394 [1st Dept 1998]).
 

 [5]
 

 . Defendants do not contest the substantiality of plaintiffs limitations. Thus, the latter requirement of the 90/180 category — that the injury prevents a person from performing substantially all of the material acts which constitute such person’s usual and customary daily activities for not less than 90 days during the 180 days immediately following the occurrence of the injury or impairment — is not at issue.