■ LAWRENCE KNOLL, Appellant, et al., Plaintiff, v SEAFOOD EXPRESS et al., Respondents. [793 NYS2d 391]—

Order, Supreme Court, New York County (Milton A. Tingling, J.), entered on or about November 10, 2003, which granted defendants' motion for summary judgment dismissing the complaint, affirmed, without costs or disbursements.

Plaintiff demonstrated, in opposition to the motion, that his injuries were causally related to the motor vehicle accident at issue. However, he failed to meet his burden of demonstrating "serious injury" within the meaning of Insurance Law § 5104 (a) and § 5102 (d) (see Gaddy v Eyler, 79 NY2d 955 [1992]).

While the dissent concludes that there is an issue of fact as to whether plaintiff suffered a "significant limitation of use of a body function or system" (§ 5102 [d]), plaintiff does not suggest, and the dissent fails to identify, any injuries that would fall into that category. At best, the record shows that plaintiff suffers from "relative numbness" of one side of his body, evidenced by "diminished sensation to light touch and pinprick," "double vision on far left lateral gaze," occasional dizzy spells and a gait imbalance. Absent from the record is a sufficient qualitative or quantitative analysis of the injuries to suggest that, either alone or in combination, they rise to the level of a limitation or limita-

tions which can be considered significant (*see Pinkowski v All-States Sawing & Trenching,* 1 AD3d 874 [2003]; *see also Toure v Avis Rent A Car Sys.,* 98 NY2d 345, 350 [2002]). Concur—Tom, J.P., Friedman and Sullivan, JJ.

Mazzarelli and Saxe, JJ., dissent in a memorandum by Mazzarelli, J., as follows: I would reverse the order appealed and reinstate plaintiff's complaint because plaintiff's injuries from his August 18, 2000 car accident met the no-fault "serious injury" threshold (Insurance Law § 5102 [d]). Plaintiff was the driver of a car that was hit in the rear by a tractor trailer owned by defendant Seafood Express and driven by defendant Flynn. Plaintiff had a preexisting benign brain stem angioma.* As a result of the crash the tumor hemorrhaged. The bleeding caused him to experience nausea, headaches, dizziness, weakness, slurred speech, numbness on his left side, and the inability to hold his head up.

Plaintiff was admitted to the hospital within a week of his accident, and doctors determined that because of the nature of the bleeding and its location deep within the right side of plaintiff's mid-brain, he was not a candidate for surgery. Doctors determined to treat his symptoms more conservatively with various medications. Plaintiff stated under oath in May 2003 that he still had the following symptoms: (1) burning in the left side of his head; (2) numbness; (3) trouble keeping his head up; (4) slurred speech; (5) vision problems in his left eye; (6) problems maintaining his balance; and (7) periodic nausea, headaches, dizziness and weakness.

Dr. Belok, plaintiff's neurologist, submitted affirmed reports from examinations he conducted on September 7 and November 20, 2000, and March 19, 2003. Dr. Belok described tests that he performed on plaintiff, and in March of 2003 he offered the following diagnosis: "Right upper mid brain/thalamic syndrome resulting in disequilibrium and horizontal diplopia due to a lateral gaze paresis. He also has a right thalamic pain syndrome resulting in the persistent left hemisensory deficit with burning dysesthesias on the left side." Dr. Belok opined: "My prognosis is guarded. In view of the persistence of symptoms despite the passage of time, it is less likely that [plaintiff] will have a neurological recovery the longer time elapses without significant improvement in symptoms." Plaintiff had a preexisting benign symptomless angioma, which was aggravated as a result of his accident, with hemorrhaging and measurable physical symptoms. Where, as here, a plaintiff has a preexisting medical

---

* An angioma is defined as a tumor composed chiefly of blood vessels or lymph vessels.

condition, it is not the original injury, but the aggravation of that condition as caused by that accident, that must be demonstrably serious (*Trunk v Spross*, 306 AD2d 463 [2003]; *see also Walsh v Kings Plaza Replacement Serv.*, 239 AD2d 408 [1997]). Thus, I would find plaintiff's submissions sufficient to raise an issue of fact as to whether the hemorrhaging and the associated neurological deficits themselves constituted a "serious injury" under the category of a "significant limitation of use of a body function or system" (Insurance Law § 5102 [d]; *see Weider v Senebouthyrath*, 182 AD2d 1124 [1992]).

The majority relies on *Pinkowski v All-States Sawing & Trenching* (1 AD3d 874 [2003]) to support the grant of defendants' motion. In that case, the plaintiff sought to recover for injuries he suffered in two auto accidents, one in August 1997 and the other in September 1999. The injuries included some stiffening of the cervical spine, an exacerbation of disturbed sleep syndrome, and limitations of the range of motion in the plaintiff's right shoulder, which were not quantified. The Third Department rejected the plaintiff's claim that he had suffered a "significant limitation of use of a body function or system" because the doctors' reports were deficient in either "fail[ing] to quantitatively or qualitatively establish serious injury or . . . fail[ing] to causally relate an injury to the 1999 accident" (*id.* at 875).

By contrast, in this case it is uncontested that plaintiff's injuries were the direct result of the August 18, 2000 car accident that caused bleeding in plaintiff's brain. Further, plaintiff's doctors have explained his injuries, giving "qualitative" descriptions of limitations of the "normal function, purpose and use" of a number of plaintiff's body parts resulting from brain damage caused by the accident (*see Toure v Avis Rent A Car Sys.*, 98 NY2d 345, 353 [2002], quoting *Dufel v Green*, 84 NY2d 795, 798 [1995]). These include eyesight problems, numbness throughout plaintiff's entire left side, and equilibrium problems which prevent him from walking properly. Certainly, to the extent that the parties' medical experts may have expressed disagreement about the severity of plaintiff's present condition, the diverse opinions are sufficient to raise issues that are for the jury, not the court, to resolve (*Weider*, 182 AD2d 1124 [1992], *supra*).