■ Carol Hock, Respondent, v Henry Aviles et al., Appellants. [801 NYS2d 572]—

Order and judgment (one paper), Supreme Court, Bronx County (Anne E. Targum, J.), entered on or about April 20, 2004, which, after a jury trial, awarded plaintiff $442,845, including interest, unanimously reversed, on the law, the facts and in the exercise of discretion, without costs, the judgment vacated and the matter remanded for a new trial on the issues of damages and whether the plaintiff satisfied the serious injury threshold of Insurance Law § 5102 (d).

Plaintiff was injured on February 18, 1999 when the car she was driving in Upper Manhattan was struck from behind by an

ambulette owned by defendant Avet Coach Corp. and driven by defendant Aviles. After the accident, plaintiff complained of pain radiating down her arms and into her hands. She was examined at St. Luke's Hospital, where a cervical collar was placed on her neck and x-rays and MRIs were taken. The MRIs showed multiple disc herniations, straightening of the cervical lordosis and foraminal stenosis at the C4-5 and C6-7 levels. The MRIs further showed preexisting degenerative conditions of her cervical spine, including osteophytes and spondylosis. Surgery was recommended, but plaintiff requested a transfer to a hospital in Pennsylvania near her home.

After plaintiff's transfer to Sacred Heart Hospital in Pennsylvania, her diagnosis by the medical staff was "cervical spondylosis and disc herniation C5-6 left greater than right." After explaining the risks to her, a surgeon at Sacred Heart, Dr. Morrow, performed the following surgery: "Anterior cervical discectomy with allograft fusion and plating at C4-5 and C5-6 for cervical radiculopathy." After the surgery, plaintiff suffered limited movement of her neck, but the conditions in her arm and hands improved substantially.

At trial, plaintiff relied on the expert testimony of a neurologist, Dr. Shields, who was not plaintiff's treating physician, but rather examined her on three occasions between 6 and 12 months after the accident. Dr. Shields, who also reviewed the hospital records and MRI films, diagnosed plaintiff with, inter alia, post-traumatic cervical myofascitis, post-traumatic bilateral radiculopathy, multiple disc herniations and cord impingement at all levels with neuroforaminal narrowing throughout. Dr. Shields acknowledged that the MRIs of plaintiff's cervical spine revealed preexisting degenerative conditions, and gave his medical opinion that the injuries suffered to plaintiff's spine, namely central cord syndrome and nerve root damage, were caused by the accident of February 18, 1999.

Defendants called three medical experts, including the only radiologist in the case, all of whom testified that plaintiff's condition was the result of the degenerative condition of her back. They further stated that no evidence existed on the MRIs to show that the condition of plaintiff's cervical spine was affected by a traumatic injury.

The jury returned a verdict in favor of plaintiff, specifically finding that she had a degenerative condition in her cervical spine prior to the accident, that such condition was aggravated by the accident, that the accident was a substantial factor in bringing about her injuries and that as a result of the accident plaintiff suffered a "permanent loss of use of a body organ,

member, function or system" and a "significant limitation of use of a body function or system" (Insurance Law § 5102 [d]). The jury awarded plaintiff $50,000 for past pain and suffering and $350,000 for future pain and suffering for a period of 35 years.

Following the verdict, defendants moved for judgment notwithstanding the verdict, arguing that the evidence failed to establish a serious injury under the Insurance Law, or, alternatively, that the jury's verdict was against the weight of the evidence. Additionally, defendants argued that the court committed "fundamental evidentiary error" in permitting plaintiff's nontreating physician to testify as to plaintiff's history, complaints and causation, and that the damages were excessive.

On appeal, defendants make the same arguments previously raised in their posttrial motion. Initially, we agree with defendants' argument that plaintiff's evidence failed to establish that she suffered a serious injury under Insurance Law § 5102 (d). With respect to the "permanent loss of use" category, the law is clear that the permanent loss of use must be "total" in order to satisfy the serious injury threshold (*Oberly v Bangs Ambulance*, 96 NY2d 295, 297 [2001]; *Crespo v Kramer*, 295 AD2d 467, 468 [2002]). Here, the evidence at trial did not establish a total loss of use of plaintiff's cervical spine. Nor did plaintiff's evidence demonstrate a "significant limitation" as required, since there was no objective medical proof as to the extent or degree of the limitation resulting from her injuries (*see Toure v Avis Rent A Car Sys.*, 98 NY2d 345 [2002]; *Newton v Drayton*, 305 AD2d 303 [2003]). While plaintiff clearly had herniated discs in her spine, neither her testimony nor that of her expert witness established the requisite quantitative or qualitative limitations necessary to support a serious injury. Thus, on the present record, defendants' motion for judgment notwithstanding the verdict should have been granted and the complaint dismissed.

Under the unusual circumstances of this case, however, we believe the correct remedy is not dismissal, but a remand for a new trial because of defense counsel's misleading pretrial assertion that he was not challenging that plaintiff's injuries constituted "serious injury." At the charge conference, the court granted plaintiff's motion for a directed verdict on liability and heard additional arguments from plaintiff's counsel. In response, defense counsel alleged that plaintiff's subjective complaints of pain did not meet the serious injury "threshold." At that point, the following colloquy occurred:

"PLAINTIFF'S COUNSEL: The only thing I'm kind of surprised,

just now, to hear, judge, is the word threshold from my adversary's mouth.

"We had discussed this at the very beginning of the trial, off the record, and I was told by my adversary there was no issue of threshold in this case.

"DEFENDANT'S COUNSEL: Your honor, having made that statement at the beginning of the trial and now, having heard the proofs, I would—I would suggest to your Honor that, in fact, there is no evidence in this case as to whether or not [plaintiff] has met the threshold in this case."

Later in the argument, the following exchange occurred:

"THE COURT: And this has—this is the first time I'm hearing of the threshold because I was under the impression that you were not asking for a threshold issue initially. And we asked that question, we discussed that question—

"DEFENDANT'S COUNSEL: I am only asking your Honor to have the proofs.

"THE COURT:—and [plaintiff's] counsel was led down the primrose path, so to speak, in not going into that area to much of a degree.

"PLAINTIFF'S COUNSEL: That's absolutely right, your Honor. I've been under the assumption the entire time, based on counsel's assumption to your Honor, that there is no threshold issue here, that I am not trying a threshold case, and I am not trying to elicit proof in that regard. Counsel is suddenly springing threshold on me after the entire case is in . . .

"THE COURT: There is, of course, nothing in the law that prevents a defendant from asking for this particular charge, and, of course, there's nothing in the law that prevents a plaintiff from proving the fact that there is no threshold issue here."

The next day, the court heard more argument on the issue. Plaintiff's counsel argued that defense counsel's off-the-record statements in the judge's presence that there was no threshold issue were "tantamount to withdrawal of a defense." Counsel explained that he was prejudiced by the untimely injection of the issue since he did not introduce evidence regarding the 90/180 category of serious injury or any range of motions restrictions "because counsel told me and Your Honor that there was no issue on the threshold." Plaintiff's counsel concluded his argument by stating:

"[N]ow, after all proof is in, I am hit in the back of the head with a two by four, Judge, because I never saw this coming and I tried a case without concern on the threshold issue based on

counsel's assertion. It's in their bill of particulars . . . their answer rather, that they claim the threshold, but then it was withdrawn before the Court but off the record by counsel saying there is no issue on threshold.

"To now charge the jury on the threshold after it was withdrawn as a defense is absolutely prejudicial to the Plaintiff's case and I object to any charge on the threshold going before the jury."

Defense counsel responded that he only brought up the threshold issue because of the testimony of plaintiff's expert which, in his view, merely showed complaints of subjective pain, instead of serious injury. Ultimately, the court denied plaintiff's motion and charged the jury with respect to two categories of serious injury.

As may be seen from the above, defense counsel's injection of the serious injury threshold into the case was a complete surprise to plaintiff and the court. Although his prior statement that the serious injury threshold was not in issue was off the record, no one denies that it occurred. Indeed, statements by the court and defense counsel during the colloquy demonstrate that there is no factual dispute at all here—defense counsel clearly and indisputably announced that there was no threshold issue in the case. A review of the parties' opening statements further supports the conclusion that the parties did not consider the serious injury threshold a part of the case. When defense counsel raised the issue at the charge conference, after both sides had rested, there was nothing plaintiff could do to salvage her case.

Where the parties have conducted a trial based on a mutual understanding that a particular issue was not being contested, it is unfair to the party acting in reliance on that understanding to be forced to defend that issue after the close of evidence (*see Simone v City of Niagara Falls*, 281 AD2d 923 [2001] [court did not err in refusing to give serious injury threshold charge where defendant conceded "liability" in stipulation and record otherwise showed that defendant conceded the issue of serious injury]; *see also Cullen v Naples*, 31 NY2d 818, 820 [1972] [record clear that it was judgment of parties that reasonableness of disclaimer was not to be an issue in this litigation]).

Plaintiff's case was fatally prejudiced by defense counsel's last-minute decision to raise the serious injury threshold. Therefore, plaintiff is entitled to a new trial notwithstanding her failure to prove her injuries were serious at the first trial. In light of this conclusion, we decline to address defendants' additional arguments for reversal. Concur—Friedman, J.P., Sullivan, Gonzalez, Sweeny and Catterson, JJ.