PEGGY L. HORTON, Respondent, v RANDOLPH A. WARDEN, Appellant. [819 NYS2d 356]—

---

Mugglin, J. Appeal from an order of the Supreme Court (O'Shea, J.), entered May 20, 2005 in Schuyler County, which, inter alia, granted plaintiff's motion for partial summary judgment.

In this personal injury action, plaintiff moved for partial summary judgment, claiming that an automobile accident was caused solely by defendant's negligence and that she suffered a serious injury as defined in Insurance Law § 5102 (d). Defendant's cross motion for dismissal pursuant to CPLR 3216 was premised on plaintiff's disobedience of two court orders requiring the filing of a trial term note of issue. Supreme Court granted plaintiff's motion in its entirety and denied defendant's cross motion. Defendant appeals, claiming that (1) summary judgment as to liability should not have been granted because issues of fact exist concerning plaintiff's own negligence, (2) plaintiff submitted insufficient proof of serious injury, and (3) his cross motion should have been granted. We disagree and affirm.

As to the first issue, plaintiff's examination before trial testimony is that on November 21, 2000, a clear, dry day, at approximately 9:30 A.M., she was driving her vehicle about 50 miles per hour in a 55 mile-per-hour zone; as she was approximately four car lengths from an intersection, she observed defendant's vehicle stopped at a stop sign on the intersecting road. Thereafter, she observed defendant's vehicle enter the intersection and, although she swerved left and attempted to brake, defendant's vehicle impacted the passenger side of her vehicle. Defendant's examination before trial testimony is that, as he entered the intersection, he saw something out of the corner of his eye and, upon looking, saw plaintiff's vehicle, which he struck with the left front of his car. Defendant was charged with failure to yield the right-of-way (see Vehicle and Traffic Law § 1142 [a]). In satisfaction of this charge, he pleaded guilty

to failing to obey a traffic control device (*see* Vehicle and Traffic Law § 1110 [a]).

"[I]t is well settled that the vehicle with the right-of-way is entitled to anticipate that a vehicle under the control of a stop sign will comply with the obligation to stop and yield the right-of-way" (*O'Hara v Tonner*, 288 AD2d 513, 514-515 [2001]; *see Garnsey v Bujanowski*, 13 AD3d 857, 857 [2004]; *Vogel v Gilbo*, 276 AD2d 977, 979-980 [2000]). Under these circumstances, plaintiff's submissions shifted the burden to defendant to raise a material issue of fact. Neither his argument that plaintiff did not take reasonable evasive action nor his attempt to raise issues of fact through the use of an accident reconstruction expert is persuasive. While we do not quarrel with the expert's mathematical calculation converting miles per hour into feet per second, we note that he relies on plaintiff's estimates of distance and speed as established fact and he has no basis for his estimates as to defendant's speed or distance from the intersection where his vehicle was stopped, thus rendering his opinion merely speculative. Moreover, a statement prepared by an insurance adjuster which claims that plaintiff stated that she was going 55 to 57 miles per hour, even if true, is such a minimal deviation as to fail to raise a question of fact (*see Mosch v Hansen*, 295 AD2d 717, 718 [2002]).

Next, as to the serious injury issue, plaintiff submitted admissible evidence demonstrating that she suffered a serious injury. Defendant did not meet the shifted burden by submitting competent medical evidence demonstrating the existence of a triable issue of fact (*see* CPLR 3212; *see also Dongelewic v Marcus*, 6 AD3d 943, 943-944 [2004]). The proof relied on by plaintiff is the report of the neurosurgeon who conducted an independent medical examination (hereinafter IME) of plaintiff for defendant. The IME took place on December 18, 2003, slightly in excess of three years postaccident. In addition to taking a history, the examining doctor performed a general physical examination and a neurological examination, and reviewed all of the extensive medical history and records concerning this accident, a prior automobile accident, and plaintiff's general medical complaints for a period starting a year and a half before the accident and concluding with the most recent prior to the IME.

Included among the voluminous records were x rays, an MRI study, a lumbar discogram, a CT scan and surgical reports for treatment subsequent to this accident. The doctor's diagnosis was:

"1. Myofascial injury lumbar region, chronic.

"2. Status post anterior interbody fusion L4-5 (October 11,

2001) for removal of herniated disc and placement of titanium cages.

"3. Status post percutaneous pedicle screw instrumentation L4-5 (August 29, 2002) for correction of lumbar spinal instability."

Among the conclusions contained in the report, are the following: (1) "Based on the review of medical records, clinical history, findings on MRI and lumbar discogram studies with CT scan, it is my medical opinion that the diagnosis of myofascial strain/injury and herniated disc at L4-5 were directly related to the accident of November 21, 2000." Further, "[t]he diagnosis of lumbar myofascial stress/strain/injury is also directly related to the accident of November 21, 2000"; (2) plaintiff's preexisting degenerative lumbar disc disease is "chronic, slowly progressive and degenerative in nature without any known curative medical treatment"; (3) surgery was necessary to correct the herniated disc suffered in the November 2000 accident; (4) plaintiff's prognosis is good; (5) plaintiff should continue with rehabilitation therapy and medication, but future surgery is not anticipated. With respect to permanency, the doctor stated: "It is my opinion that the scar formation, surgical trauma to the abdominal and lumbar muscles as well as ligaments inherent to the surgical procedure will impart a significant permanent injury to the examinee. Furthermore, the application/implantation of spinal instrumentation (titanium cages, pedicle screw and plates) will contribute to a significant permanency. The exact determination of the degree of permanency is not possible at this stage since the examinee is still in the recuperative phase following her second surgery on August 29, 2002. Any conclusion regarding the degree or existence of permanent injury has to be differed [sic] to a later stage when complete bone fusion and stabilization of the spine has been attained." Finally, the doctor concluded that "maximum medical improvement state has not yet been achieved" but that "[b]ased on [his] review of the medical records, details of present clinical condition, findings on neurological examination and general performance status of the examinee . . . the examinee is unable to return to her occupation at the present stage."

In view of this report, defendant's principal argument on appeal—that plaintiff's prior accident and preexisting degenerative condition raise issues of fact concerning causation and serious injury—are meritless. While Supreme Court found only that plaintiff sustained "a significant permanent injury" without further categorization, it is plaintiff's appellate argument that her evidence establishes that she suffered a serious injury under

at least the "permanent consequential limitation of use of a body organ or member" category or the "significant limitation of use of a body function or system" category (Insurance Law § 5102 [d]). While this report does not contain a numerical quantitative assessment (*see John v Engel*, 2 AD3d 1027 [2003]; *see also Toure v Avis Rent A Car Sys.*, 98 NY2d 345, 353 [2002]), it does contain the doctor's findings on his neurological examination that "[s]pinal and truncal motion markedly limited because of pain and the expected restriction imparted by the anterior and posterior lumbar fusion instrumentation. Side bending and rotation are also markedly limited." Moreover, the record contains plaintiff's testimony that, prior to the accident, she was employed as a licensed practical nurse in a nursing home and that, since the accident, she has been on disability and, as noted, defendant's doctor, three years postaccident, opined that she is still unable to return to her employment. We find that this record amply demonstrates that plaintiff has suffered a medically significant injury as a result of this accident and that her limitations are not so "minor, mild or slight" as to be considered not serious within the meaning of Insurance Law § 5102 (d) (*see Licari v Elliott*, 57 NY2d 230, 236 [1982]).

As to the third issue, we first note that plaintiff now has filed a trial term note of issue and, in any event, dismissal pursuant to CPLR 3216 is not authorized absent service of the requisite 90-day demand (*see* CPLR 3216 [b] [3]; *compare Vasquez v State of New York*, 12 AD3d 917, 919-920 [2004]).

Crew III, J.P., Peters, Rose and Lahtinen, JJ., concur. Ordered that the order is affirmed, with costs.