■ NORBEY GAVIRIA, Appellant, v GEOVANY ALVARDO, Respondent. [884 NYS2d 134]—

In an action to recover damages for personal injuries, the plaintiff appeals from an order of the Supreme Court, Queens County (Agate, J.), dated August 20, 2008, which granted the defendant's motion for summary judgment dismissing the complaint on the ground that the plaintiff did not sustain a serious injury within the meaning of Insurance Law § 5102 (d).

Ordered that the order is reversed, on the law, with costs, and the defendant's motion for summary judgment dismissing the complaint is denied.

The defendant met his prima facie burden of showing that the plaintiff did not sustain a serious injury within the meaning of Insurance Law § 5102 (d) as a result of the subject accident (*see Toure v Avis Rent A Car Sys.*, 98 NY2d 345 [2002]; *Gaddy v Eyler*, 79 NY2d 955, 956-957 [1992]). In opposition, the plaintiff

raised a triable issue of fact as to whether he sustained a serious injury to his cervical and/or lumbar regions of his spine under the permanent consequential limitation and/or significant limitation of use categories of Insurance Law § 5102 (d) as a result of the subject accident (*see Williams v Clark,* 54 AD3d 942 [2008]; *Casey v Mas Transp., Inc.,* 48 AD3d 610 [2008]; *Green v Nara Car & Limo, Inc.,* 42 AD3d 430 [2007]; *Francovig v Senekis Cab Corp.,* 41 AD3d 643, 644-645 [2007]; *Acosta v Rubin,* 2 AD3d 657 [2003]).

The plaintiff raised a triable issue of fact based on the submissions of Dr. Richard J. Rizzuti, Dr. John J. McGee, and Dr. Aric Hausknecht. Dr. McGee, the plaintiff's treating physician, established in his initial examination report dated May 9, 2003, that the plaintiff had significant limitations in the ranges of motion of the cervical and lumbar regions of his spine. These contemporaneous significant limitations were deemed by Dr. McGee to have been caused by the subject accident. Shortly after the accident, the plaintiff underwent magnetic resonance imaging (hereinafter MRI) scans of the cervical and lumbar regions of his spine, which were read by Dr. Rizzuti, his examining radiologist. The cervical MRI showed posterior disc herniations at C3-4 and C4-5 with impingement on the anterior aspect of the spinal canal and the left intervertebral foramen at C3-4. The lumbar MRI showed posterior disc herniations at L4-5 and L5-S1 with impingement on the anterior aspect of the spinal canal, the neural foramina bilaterally at L4-5, and the nerve roots bilaterally at L5-S1. In his report of his recent examination of the plaintiff and his personal review of the MRI films, Dr. Hausknecht, the plaintiff's examining neurologist, noted his agreement with Dr. Rizzuti's interpretation of the plaintiff's MRIs, and opined that the plaintiff had significant limitations in the range of motion of the cervical and lumbar regions of his spine, and that these limitations were permanent and causally related to the subject accident. Dr. Hausknecht further opined that the plaintiff sustained permanent consequential limitations of use of the cervical and lumbar regions of his spine, and that the limitations noted were significant.

While it is true that the defendant's radiologist opined that the MRI scans taken of the cervical and lumbar regions of the plaintiff's spine revealed only bulging discs which were degenerative in nature, Dr. Hausknecht, who reviewed the same films, observed herniated discs, which he deemed to be caused by the subject accident. Thus, the conflicting medical opinions regarding the nature and etiology of the injuries to the cervical and lumbar regions of the plaintiff's spine were sufficient to

raise a triable issue of fact (*see Cariddi v Hassan,* 45 AD3d 516 [2007]).

Contrary to the defendant's assertions, the plaintiff adequately explained the lengthy gap in his treatment. The plaintiff admitted in his affidavit that he treated for only seven months after the subject accident, but stated that he stopped because his no-fault benefits terminated and he could not thereafter afford to pay for further treatments out of his own pocket (*see Black v Robinson,* 305 AD2d 438 [2003]). Moreover, Dr. McGee stated in his affirmation that the plaintiff stopped treating, inter alia, because he had reached his maximum medical improvement and any further treatment would essentially be palliative in nature (*see Bonilla v Tortoriello,* 62 AD3d 637 [2009]; *Shtesl v Kokoros,* 56 AD3d 544, 546-547 [2008]). Skelos, J.P., Florio, Balkin, Belen and Austin, JJ., concur.