Rose, J.
(dissenting). While I agree with the majority that there is sufficient medical proof indicating that plaintiff suffered a concussion as a result of the 2011 accident, the concussion itself is not at issue here. Rather, the issue is whether, at trial, plaintiff adduced the type of objective, qualitative proof of his resulting physical and cognitive limitations necessary to measure the seriousness of those limitations and meet the standard set forth in Toure v Avis Rent A Car Sys. (98 NY2d 345 [2002]). I cannot agree that the proof presented by plaintiff meets the Toure standard and, therefore, I respectfully dissent.
In Toure, the Court of Appeals emphasized that, in the absence of numerical measurements, an expert’s “qualitative assessment of a plaintiff’s condition” is sufficient to establish the extent or degree of limitation so long as “the evaluation *126 has an objective basis and compares the plaintiff’s limitations to the normal function, purpose and use of the affected body-organ, member, function or system” (id. at 350; see Perl v Meher, 18 NY3d 208, 217 [2011]). Toure clarified that, before the trier of fact can find that a plaintiff suffered a serious injury within the meaning of Insurance Law § 5102 (d), there must be objective medical evidence to substantiate the claimed limitation and an expert must undertake a “ ‘comparative determination’ ” of the degree or qualitative nature of the injury in relation to normal functioning (Toure v Avis Rent A Car Sys., 98 NY2d at 353, quoting Dufel v Green, 84 NY2d 795, 798 [1995]). Toure noted that, without objective medical evidence, “the legislative intent of the No-Fault Law to eliminate statutorily-insignificant injuries” is frustrated (Toure v Avis Rent A Car Sys., 98 NY2d at 351). In addition, Toure emphasized that, if a limitation is assessed as “ ‘minor, mild or slight’ ” when compared to normal functioning, it does not qualify as a serious injury (id. at 353, quoting Licari v Elliott, 57 NY2d 230, 236 [1982]; see DeHaas v Kathan, 100 AD3d 1057, 1058 [2012]; Womack v Wilhelm, 96 AD3d 1308, 1311 [2012]). In my view, these requirements were not met here and, as a result, the majority has strayed from the standard set forth in Toure in finding that the verdict was supported by legally sufficient evidence.
Despite the majority’s characterization of the evidence as “objectively observed,” plaintiff’s longtime primary care physician readily acknowledged that “virtually all” of plaintiff’s complaints were subjective in nature, that “all of the diagnostics of [plaintiff’s] head have come out normal” and that the neurologist and neuro-ophthalmologist that he referred plaintiff to did not find anything objectively wrong with him. To the extent that the physician can be said to have compared plaintiff’s limitations to plaintiff’s pre-accident functioning, the physician did no more than describe plaintiff as “[n]ot as quick.” The physician went on to explain that plaintiff’s “candle is burning a little dimmer than what it used to be, so he’s a little slower in cognition and a little slower physically.” As a comparative determination, the physician’s reliance on the phrase “a little” suggests a limitation that is synonymous with “minor, mild or slight.” Even when plaintiff’s counsel parroted the statutory language defining serious injury by asking if plaintiff had “suffered a significant limitation of his brain,” and the physician responded “yes” (see Dean v Ahn Ja Jin, 78 AD3d 1297, 1299 [2010]; Licygiewicz v Stearns, 61 AD3d 1254, 1255 *127 [2009]), the physician did not change his prior testimony or opine that the combined impact of “a little slower” cognitive and physical functioning would, together, increase the measure or seriousness of plaintiff’s claimed limitations (compare Viscusi v Ostrowski, 25 Misc 3d 1213[A], 2007 NY Slip Op 52652 [U], *4 [Sup Ct, Schenectady County 2007], affd for reasons stated below 53 AD3d 965 [2008]).
As for the testimony of the nurse practitioner who coordinated plaintiff’s care at the Upstate Concussion Center, he described a concussion as synonymous with “mild traumatic brain injury.” In addition, he conceded that no neuropsychological testing was performed on plaintiff, despite the fact that testing does exist that could have been used to objectively confirm if plaintiff did, in fact, suffer more than “a little” cognitive deficit. While the nurse practitioner testified that plaintiff was still symptomatic 18 months after the accident, he conceded that, because no testing was done, plaintiff’s continued treatment was solely based upon his “report that he was having cognitive difficulties.” A review of plaintiff’s medical records from the Upstate Concussion Center reveals that, although a psychologist found that plaintiff suffered “several physical, cognitive, and emotional symptoms that are consistent with post-concussion sequelae,” the psychologist offered no comparative determination or qualitative assessment and failed to set forth any objective testing that was done to confirm her findings or describe the evidence upon which she based her conclusion, aside from plaintiff’s subjective complaints.
Despite the Toure requirements, the medical opinions regarding the present limitation to plaintiff’s cognitive and physical functioning are based on his actions and complaints, which are subjective in nature, rather than objectively based medical testing (cf. Houston v Hofmann, 75 AD3d 1046, 1048-1049 [2010]; Villeda v Cassas, 56 AD3d 762, 763 [2008]; compare Flanders v National Grange Mut. Ins. Co., 124 AD3d 1035, 1036-1038 [2015]). It is undisputed that no objective medical testing was performed on plaintiff in order to confirm his subjective symptoms, aside from a CAT scan and X ray that did not disclose any abnormalities. Although the nurse practitioner testified that neurological diagnostic testing was available, there was no explanation as to why it was not *128 utilized.* In addition, the testimony of the nurse practitioner makes clear that he undertook no “ ‘comparative determination’ ” to measure the severity of plaintiff’s present limitations so as to enable the jury to determine whether they qualify as significant or consequential (Toure v Avis Rent A Car Sys., 98 NY2d at 353, quoting Dufel v Green, 84 NY2d at 798; see June v Gonet, 298 AD2d 811, 813 [2002]).
In sum, I cannot agree that the medical evidence relied upon by the majority supports the conclusion that plaintiff presented legally sufficient evidence to sustain the jury verdict in his favor. Accordingly, I would affirm Supreme Court’s order and judgment setting aside the verdict.
McCarthy, J.P., Lynch and Aarons, JJ., concur with Clark, J.; Rose, J., dissents in a separate opinion.
Ordered that the order and judgment are reversed, on the law, with costs, verdict reinstated and matter remitted to the Supreme Court for further proceedings not inconsistent with this Court’s decision.

 This is not to suggest that neurological or diagnostic testing is always required to establish a claim of a serious brain injury. Rather, here, because the medical providers who examined plaintiff did not base their assessments on anything other than plaintiffs subjective actions and complaints, medical testing would have provided an objective way for the medical providers to substantiate those subjective symptoms (see e.g. Flanders v National Grange Mut. Ins. Co., 124 AD3d at 1037).