| **Parker v Islam** |
|:---:|
| 2023 NY Slip Op 34570(U) |
| December 28, 2023 |
| Supreme Court, Kings County |
| Docket Number: Index No. 508485/2019 |
| Judge: Debra Silber |
| Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service. |
| This opinion is uncorrected and not selected for official publication. |

**SUPREME COURT OF THE STATE OF NEW YORK**
**COUNTY OF KINGS : PART 9**

_____

**VALERIE K. PARKER,**

                                    **Plaintiff,**

       **-against-**

**MD MONIRUL ISLAM,**

                                **Defendant.**

_____

**DECISION / ORDER**
**Index No. 508485/2019**

**Motion Seq. No. 4**

_**Recitation, as required by CPLR 2219(a), of the papers considered in the review of defendant's motion for summary judgment.**_

| Papers | NYSCEF Doc. |
|---|---|
| Notice of Motion, Affirmation and Exhibits Annexed.................... | 39-52 |
| Affirmation in Opposition and Exhibits........................................ | 64-86 |
| Reply Affirmation............................................................................ | 87 |

    **Upon the foregoing cited papers, the Decision/Order on this motion is as follows:**

    This is a personal injury action arising out of a motor vehicle accident that occurred on June 27, 2017. At the time of the accident, the plaintiff and the defendant were each driving their own vehicles when they came into contact with each other on the Brooklyn-Queens Expressway near Kent Avenue, in Brooklyn, New York.

    The defendant timely moves for summary judgment dismissing the plaintiff's complaint, pursuant to CPLR Rule 3212, on the ground that plaintiff did not sustain a "serious injury" as defined by Insurance Law § 5102 (d).

    Plaintiff's bill of particulars alleges that she sustained injuries to her head and brain, both of her shoulders, both of her wrists, her cervical spine, and her lumbar spine as a result of the accident. At the time of the accident, plaintiff was approximately 39 years old. Although an ambulance responded to the accident scene, the plaintiff declined to be

[* 1]

transported to a hospital, but she testified that she went to a hospital emergency room six days after the accident.

The defendant provides, in support of his motion, a certified "FDNY-EMS Electronic Prehospital Care Report," affirmed reports from a radiologist, a neurologist, an orthopedist, and a neuropsychologist, the plaintiff's EBT transcript, plaintiff's bill of particulars and first and second supplemental bills of particulars, the pleadings, and an affirmation of counsel.

Dr. Melissa Sapan Cohn, the defendant's radiologist, did not examine plaintiff. She reviewed the NeuroQuant MRI of the plaintiff's brain and her impression is that it is a "[n]ormal NeuroQuant examination." Her impression is that there is "[n]o acute intracranial pathology." She further states that "[t]he only finding on this examination is the presence of a superiorly convex border to the pituitary gland. This can be seen as a normal anatomic variant or may be indicative of an underlying pituitary microadenoma. According to the supplied report, this was present on prior studies dated 6/19/2020 and 12/30/2019. . . . Microadenomas occur sporadically and are frequently seen within the general population. They are not a sequalae of underlying pituitary trauma. The remainder of the brain is completely normal." She concludes that [t]here is no evidence for an acute traumatic related injury on the submitted examination." The court notes that Dr. Sapan Cohn did not review the MRIs of the plaintiff's cervical spine or lumbar spine and offers no opinion on the plaintiff's claimed injuries to those body parts.

Warren Cohen, M.D., a neurologist, examined the plaintiff on May 2, 2022, four years and ten months after the accident. He provides an affirmed IME report [Doc 48] that states that he reviewed plaintiff's bill of particulars and supplemental bills of particulars,

[* 2]

the plaintiff's medical records, including x-ray and MRI reports, and NCV and EMG test results.

In his report, Dr. Cohen states that he conducted a neurological examination of the plaintiff and found that the plaintiff's "head appears normal and is atraumatic. Posture and stance are normal. On palpation of the neck and entire back she reports that tingling of the entire left side of the body is evoked." Upon exam of the plaintiff's cervical spine, thoracic spine and lumbar spine, he noted that "[n]o muscle spasm and no trigger points were noted." He only performed range of motion testing on the plaintiff's lumbar spine, which he reported as being normal, except for flexion, where he found that the plaintiff's range of motion was 50 degrees when the normal is 60 degrees. He did not test plaintiff's cervical spine range of motion, despite reporting that she arrived "wearing a soft cervical collar." Dr. Cohen states that this is because plaintiff "declines to remove the cervical collar" so "no measurement of cervical range of motion . . . was attempted." After conducting a neurological exam, Dr. Cohen's impression was that the plaintiff had sustained cervical and lumbosacral sprains which have "resolved." He defers rendering an opinion on the plaintiff's cognitive and emotional complaints "to an appropriate specialist," and states that "[b]ased upon the current examination, the prognosis for neurologic function is good." Finally, Dr. Cohen opines that "[t]he neurologic examination is normal with no objective clinical evidence of radiculopathy, ulnar or median neuropathy, gait instability, vestibular dysfunction, or of any deficit of neurologic function. There are a multitude of neurologic complaints, and there are no objective signs of impairment of neurologic function that correlate with the subjective complaints. Based upon the current exam findings, at least some of those complaints have a clear functional component."

[* 3]

Pierce Ferriter, M.D., an orthopedist, examined plaintiff on May 3, 2022, four years and ten months after the accident. He provides an affirmed IME report [Doc 49] that states that he reviewed plaintiff's bill of particulars and supplemental bills of particulars, and the plaintiff's medical records, including MRI reports, EMG and NCV reports.

In his report, Dr. Ferriter states that he conducted range of motion tests on the parts of the body that the plaintiff claims were injured in the subject accident. However, he dd not examine or test plaintiff's shoulders. In her original bill of particulars, it states, in a long list of injuries, "limitation of motion, function and use of cervical spine, shoulders and upper extremities." In his examination of the plaintiff's cervical spine, lumbosacral spine, right wrist and hand, and left wrist and hand, he reports that he found that the plaintiff had normal ranges of motion in all planes, when compared to "normals," and that all associated tests were either negative or within normal limits. Dr. Ferriter opines that "[t]he examinee presents with a normal orthopedic examination on all objective testing. The orthopedic examination is objectively normal and indicates no findings which would result in orthopedic limitations in use of the body parts examined. The examinee is capable of functional use of the examined body parts for normal activities of daily living. The claimant is capable of working without limitations. There Is no permanency or disability."

Victoria Londin, Ph.D., a neuropsychologist, examined plaintiff on May 3, 2022, four years and ten months after the accident. She provides an affirmed IME report [Doc 50] that states that she reviewed plaintiff's bill of particulars, a "psychological evaluation" by Moses Weksler, Ph.D., dated 8/21/17 - 9/16/17, and plaintiff's medical records. In her report, Dr. Londin states that she conducted a neuropsychological exam of the plaintiff. In her report she finds that the plaintiff's "profile exceeds the cut-off for valid test

[* 4]

responding on the following scales of this measure: Neurologic Impairment/Amnestic Disorders, Low Intelligence, and Affective Disorders. This profile is associated with atypical, unusual, or bizarre responses that are not given by TBI patient, patients with dementias, or normal adults on which this measure was normed." She further states that "[w]ith respect to empirical markers of TBI severity, the degree of cognitive deficit reflected in Ms. Parker's test performance is inconsistent with reasonable clinical expectations based on the amount of time since the Injury and the empirically determined degree of severity of head injury. Note, that Brain MRI and CT were negative. The question of whether Ms. Parker sustained a brain injury is questionable. Based on the history as reported; she does not meet the criteria for a diagnosis of TBI. Recall there was no confirmed loss of consciousness, no meaningful alteration of consciousness, no significant anterograde or retrograde amnesia, and no finding of trauma on neuroimaging. Consequently, the observed atypical or clinically inconsistent performance on some neurocognitive tests within this test battery cannot be accepted as a reflection of her true level of ability or functioning in the areas of cognition assessed by these tests. Factors contributing to failure on measures of effort and response-bias in the present case may include: Psychiatric Disorder-Symptoms (e.g., depression, anxiety, personality disorder); Symptom Magnification (e.g., a preoccupation either conscious or unconscious with perceived cognitive difficulties and/or emotional distress and a propensity to over report or exaggerate these symptoms); Other motivational factors (e.g., compensation)."

In summary, Dr. Londin opines that "based on the issues and factors discussed above, there is no objective evidence in these findings to support a claim of neurocognitive disability or neurocognitive deficits secondary to TBI of the degree represented in some of her test performance. There is no objective evidence in these

[* 5]

findings to support a claim of psychological disability or psychological symptomatology secondary to physical injuries and/or TBI of the degree represented In her self-report or her performance on some psychometric tests or self-report. From a neuropsychological perspective, and in the absence of valid contrary findings, there is no objective evidence to support a claim that Ms. Parker cannot meet usual demands and activities of daily living as well as those of her employment. Her degree of impairment is more consistent with a picture of an individual who is experiencing a great deal of psychiatric psychopathology that may have been triggered by or intensified by the accident of record."

The court finds that defendant fails to make a prima facie case for summary judgment by establishing that plaintiff did not sustain a serious injury within the meaning of Insurance Law § 5102(d) as a result of the subject accident (See, *Toure v Avis Rent A Car Sys.*, 98 NY2d 345 [2002]). In his exam of the plaintiff, Dr. Cohen, the defendant's examining neurologist, found a ten-degree reduction in range of motion upon flexion in the plaintiff's lumbar spine. The fact that Dr. Ferriter, the defendant's examining orthopedist, claims that he found that the plaintiff had full range of motion in her lumbar spine at an exam that he conducted one day after the exam that Dr. Cohen conducted creates a question of fact regarding the defendant's doctors' conflicting findings. In addition, none of defendant's doctors examined the plaintiffs shoulders, which she claimed were injured in the accident.

As the defendant has failed to meet his burden of proof as to all claimed injuries and all applicable categories of injury, the motion must be denied, and it is unnecessary to consider the papers submitted by plaintiff in opposition (see *Yampolskiy v Baron*, 150 AD3d 795 [2d Dept 2017]; *Valerio v Terrific Yellow Taxi Corp.*, 149 AD3d 1140 [2d Dept 2017]; *Koutsoumbis v Paciocco*, 149 AD3d 1055 [2d Dept 2017]; *Aharonoff-Arakanchi v*

[* 6]

*Maselli*, 149 AD3d 890 [2d Dept 2017]; *Lara v Nelson*, 148 AD3d 1128 [2d Dept 2017]; *Sanon v Johnson*, 148 AD3d 949 [2d Dept 2017]; *Weisberg v James*, 146 AD3d 920 [2d Dept 2017]; *Marte v Gregory*, 146 AD3d 874 [2d Dept 2017]; *Goeringer v Turrisi*, 146 AD3d 754 [2d Dept 2017]; *Che Hong Kim v Kossoff*, 90 AD3d 969 [2d Dept 2011]).

In any event, had defendant made a prima facie case for dismissal, plaintiff has provided enough evidence to overcome it. In opposition to the motion, aside from an emergency room record, chiropractic records, physical therapy records and psychological records which are not in admissible form, the plaintiff offers an affirmation and reports from her treating neurologist, Dr. Irving Friedman. In his report dated August 29, 2023, he states that "Ms. Valerie Parker sustained multiple trauma on June 27, 2017 during an MRI." As the date listed is the same date as the subject accident, the court concludes that this is a typo and should have said MVA instead of MRI. Dr. Friedman goes on to state that he "personally examined her on July 26, 2017, September 20, 2017, and November 2, 2017. She had persistent headaches, vertigo and marked emotional disturbances. She was started on a course of physical therapy. She remained with a catastrophic affect." He opines that "[w]ith more than a reasonable degree of neurological certainty, Ms. Valerie Parker was unable to perform all material acts which constituted her usual and customary activities for the first 90 days of the first 180 days following her June 27, 2017. With a reasonable degree of neurological certainty, she was totally and painfully disabled both emotionally and physically from June 27, 2017 through at least the remainder of the year, i.e., December 31, 2017."

As such, even if the defendant had made a prima facie showing, thereby shifting the burden of proof to the plaintiff, the affirmation from Dr. Friedman would be sufficient to raise a triable issue of fact with a "battle of the experts," and require a trial.

[* 7]

Accordingly, it is **ORDERED** that the motion is denied.

This constitutes the decision and order of the court.

Dated: December 28, 2023

**E N T E R :**

**Hon. Debra Silber, J.S.C.**

[* 8]