*State of New York*
*Supreme Court, Appellate Division*
*Third Judicial Department*

Decided and Entered:  February 16, 2017                522813
_____

TROY J. RODMAN,
                        Appellant,

        v                                    OPINION AND ORDER

FRANK J. DEANGELES,
                        Respondent.
_____

Calendar Date:  November 21, 2016

Before:  McCarthy, J.P., Lynch, Rose, Clark and Aarons, JJ.

_____

        Lynn Law Firm, LLP, Syracuse (Patricia A. Lynn-Ford of
counsel), for appellant.

        Law Office of Keith D. Miller, Liverpool (Keith D. Miller
of counsel), for respondent.

_____

Clark, J.

        Appeals (1) from an order of the Supreme Court (Rumsey,
J.), entered December 9, 2015 in Cortland County, which granted
defendant's motion to set aside a verdict in favor of plaintiff
and dismissed the complaint, and (2) from the judgment entered
thereon.

        On June 7, 2011, defendant's vehicle struck plaintiff's
parked car as plaintiff was unloading items from his vehicle,
thereby causing plaintiff's vehicle to strike plaintiff and
"send[] him a distance through the air and onto the sidewalk."
Plaintiff struck the back of his head against the curb, knocking
him unconscious and causing a three centimeter laceration on his
scalp that required five staples.  Plaintiff thereafter commenced
this action, alleging that he sustained a serious injury as a

result of defendant's negligence.  Following joinder of issue and discovery, defendant conceded the issue of liability and the matter proceeded to trial solely on the issue of whether plaintiff sustained a serious injury within the meaning of Insurance Law § 5102 (d).  Supreme Court denied defendant's motion to dismiss the complaint at the close of all the proof, and the jury ultimately returned a verdict for plaintiff finding that, as a result of defendant's negligence, plaintiff had sustained a permanent consequential limitation of use of a body organ or member and a significant limitation of use of a body function or system.[1]  Supreme Court subsequently granted defendant's motion to set aside the verdict on the basis that it was not supported by legally sufficient evidence and dismissed the complaint (see CPLR 4404 [a]).  Plaintiff appeals from Supreme Court's order, as well as the judgment entered thereon.

"[T]he legislative intent underlying the No-Fault Law was to weed out frivolous claims and limit recovery to significant injuries" (Dufel v Green, 84 NY2d 795, 798 [1995]; see Toure v Avis Rent A Car Sys., 98 NY2d 345, 350 [2002]; see also Licari v Elliot, 57 NY2d 230, 234-235 [1982]).  With this legislative purpose in mind, the Court of Appeals has held that where, as here, a plaintiff seeks to satisfy the statutory serious injury threshold under the permanent consequential limitation of use or the significant limitation of use categories, he or she must proffer objective medical evidence "involv[ing] a comparative determination of the degree or qualitative nature of [the] injury based on the normal function, purpose and use of the body part" (Dufel v Green, 84 NY2d at 798; see Toure v Avis Rent A Car Sys., 98 NY2d at 353).  The required "comparative determination" may be established by either "an expert's designation of a numeric percentage of a plaintiff's loss of range of motion" or "[a]n expert's qualitative assessment of a plaintiff's condition . . .,

---

[1]  The jury, however, found against plaintiff on the issue of whether he sustained a medically determined injury or impairment of a nonpermanent nature that prevented him from performing substantially all of the material acts which constituted his customary daily activities for 90 out of the 180 days immediately following the accident.

provided that the evaluation has an objective basis and compares the plaintiff's limitations to the normal function, purpose and use of the affected body organ, member, function or system" (Toure v Avis Rent A Car Sys., 98 NY2d at 350; see Simpson v Feyrer, 27 AD3d 881, 882 [2006]; John v Engel, 2 AD3d 1027, 1029 [2003]).  "[S]ubjective complaints alone are not sufficient" to meet the threshold (Toure v Avis Rent A Car Sys., 98 NY2d at 350; see Perl v Meher, 18 NY3d 208, 216 [2011]).

Here, the trial evidence undisputedly demonstrated that plaintiff sustained a severe head wound as a result of the accident.  Immediately following the crash, plaintiff was discovered lying on the ground in a pool of blood, which was flowing from the back of his head, and plaintiff reported that he was briefly knocked unconscious.  The responding paramedic testified that plaintiff's head wound had "exposed fatty tissue," which indicated to him that plaintiff had sustained "a pretty good blow to the head," and that the collision must have had "great kinetic force" because it had knocked plaintiff out of his shoes.  The paramedic further stated that plaintiff immediately complained of a severe headache, dizziness and increasing sensitivity to light and sound.  At the emergency room, five staples were required to close the gash on plaintiff's scalp, and plaintiff remained in the hospital for two nights.

As to the medical evidence, at least three separate physicians examined plaintiff and determined that he sustained a traumatic brain injury — commonly known as a concussion — as a result of the accident and that he continued to suffer from post-concussive syndrome thereafter.  Plaintiff's longtime primary care physician, who had known plaintiff since 1994, examined plaintiff one week after the accident and continued to treat him every two to three months through the date of trial for his ongoing complaints of dizziness, vertigo, chronic headaches, vision issues and impaired balance, memory and concentration. Plaintiff's primary care physician testified that, prior to the accident, plaintiff was a "[v]ery active" person with no physical or mental limitations.  Relying on his knowledge of plaintiff's preaccident status as a point of reference, the primary care physician testified that he personally observed a "slow[ing]" of plaintiff's mental and physical faculties after the accident.

Specifically, he testified that he had observed plaintiff wince his eyes in pain, struggle to focus and make eye contact, exhibit signs of decreased concentration, have difficulty with problem solving and word retrieval and experience balance issues. The primary care physician testified that, overall, the functionality of plaintiff's brain had "been limited" in that he was "[n]ot as quick" and his "candle [was] burning a little dimmer than what it used to be." When asked to support his opinion that plaintiff had a significant brain limitation, the primary care physician stated that plaintiff had suffered "decreased cognition, [a] decrease in focus with vision, [and a] decrease in some physical ability." Considering the foregoing, the jury was not required to reach the dissent's conclusion that the primary care physician was merely parroting the statutory language when he indicated that plaintiff suffered a significant limitation to his brain, as a valid line of reasoning and permissible inferences would support the conclusion that the primary care physician's assertion that such limitation was significant was based on his assessment of the combined cognitive and physical functioning decreases that he described.

The record also established that plaintiff was treated at the Upstate Concussion Center on an outpatient basis beginning in July 2011. A rehabilitation psychologist performed an initial psychological examination on plaintiff in July 2011 and a psychological reevaluation in May 2013 and diagnosed plaintiff as having sustained a concussion during the accident and as suffering from several "physical, cognitive, and emotional symptoms that are consistent with post-concussion sequelae." During both examinations, the psychologist observed that plaintiff had a reduced language "processing speed." The nurse practitioner responsible for coordinating plaintiff's care at the concussion center testified that a concussion is "an alteration in the <u>normal brain function</u> due to trauma" (emphasis added) and that symptoms of postconcussion sequela include, among other things, headaches, dizziness, vision changes, issues with balance and cognitive changes. The nurse practitioner further explained that plaintiff received physical therapy to address balance issues, occupational therapy for vision rehabilitation and cognitive therapy for plaintiff's memory and concentration impairments. The physical and occupational therapy records

demonstrated that plaintiff experienced some limited quantitative improvements in his balance, memory and concentration, but continued to suffer from cognitive impairments at the end of his treatment.[2]

With respect to permanency, plaintiff's primary care physician and the nurse practitioner each testified that symptoms stemming from head trauma are generally permanent if they continue to present more than 12 to 18 months after the injury-producing event. Here, as plaintiff's symptoms persisted more than four years after his accident, both the primary care physician and the nurse practitioner opined that plaintiff had sustained a permanent limitation of his cognitive functioning.

While the CT scan taken of plaintiff's brain at the hospital immediately following the accident revealed a large hematoma on the back of his scalp, that CT scan, as well as a subsequent scan, did not show any brain abnormalities. However, plaintiff's primary care physician explained, without contradiction, that the negative scans were not out of the ordinary because "usually no . . . injury can be seen on a CT scan," and the nurse practitioner similarly testified that the majority of concussions do not show up on imaging. In addition, although the primary care physician acknowledged that plaintiff's reported and ongoing complaints were subjective in nature, he testified that a concussion, by its very definition, is a subjective diagnosis. The nurse practitioner similarly testified that a concussion diagnosis is a clinical diagnosis that necessarily relies on a patient's subjective complaints, as well as the patient's medical history and certain inclusion criteria.

---

[2] For instance, plaintiff's occupational therapy records indicated that plaintiff was repeatedly able to recall five out of five items on a grocery list, but was unable to achieve the goal of recalling 7 out of 10 items on a grocery list.

Notwithstanding the negative scans, the absence of neurological testing[3] and the subjectivity of plaintiff's complaints, many of plaintiff's reported symptoms, including his impaired concentration and balance and difficulty with problem solving and word retrieval, were objectively and personally observed by plaintiff's primary care physician, who had the necessary historical knowledge and ability to compare his clinical, postaccident observations of plaintiff's condition to his prior observations of plaintiff's preaccident condition (see Toure v Avis Rent A Car Sys., 98 NY2d at 353 [clinical observations of a plaintiff's limitations may constitute objective medical evidence]).  Contrary to the dissent's assertion, the primary care physician's treatment and assessment of plaintiff's injuries were also informed by his review of the medical records of the rehabilitation psychologist and plaintiff's physical and occupational therapists, which documented their objective observations of plaintiff's physical and cognitive deficiencies and limited improvements over a period of nearly two years.  Moreover, the bases for the primary care physician's qualitative assessment of the seriousness of plaintiff's injury, including his observations of plaintiff's preaccident and postaccident conditions, as well as the accuracy of his memory, could "be tested during cross-examination, challenged by another expert and weighed by the trier of fact" (id. at 351; see Dufel v Green, 84 NY2d at 798).[4]

In our view, the comparative determination of plaintiff's primary care physician, taken together with plaintiff's defined

---

[3]  Objective testing is not required to support an expert's qualitative assessment that a plaintiff sustained a consequential or significant limitation of use; all that is required is that the qualitative assessment have an "objective basis and compare[] the plaintiff's limitations to the normal function, purpose and use of the affected body organ, member, function or system" (Toure v Avis Rent A Car Sys., 98 NY2d at 350).

[4]  Defendant did not present any expert testimony as to plaintiff's head injury; the opinion testimony of defendant's expert was strictly limited to plaintiff's orthopedic injuries.

-7-                        522813

head wound and subjective complaints immediately after the accident and continuing four years later, provided the jury with a valid line of reasoning and permissible inferences that could lead it to the rational conclusion that plaintiff suffered a permanent consequential limitation of use of a body organ or member and a significant limitation of use of a body function or system (see generally Toure v Avis Rent A Car Sys., 98 NY2d at 350; cf. Viscusi v Ostrowski, 25 Misc 3d 1213[A], 2007 NY Slip Op 52652[U], *4 [Sup Ct, Schenectady County 2007], affd for reasons stated below 53 AD3d 965 [2008]; compare Rumford v Singh, 130 AD3d 1002, 1003-1004 [2015]).  Accordingly, Supreme Court erred in granting defendant's posttrial motion to set aside the jury's verdict and the verdict must be reinstated.

        McCarthy, J.P., Lynch and Aarons, JJ., concur.


Rose, J. (dissenting).

        While I agree with the majority that there is sufficient medical proof indicating that plaintiff suffered a concussion as a result of the 2011 accident, the concussion itself is not at issue here.  Rather, the issue is whether, at trial, plaintiff adduced the type of objective, qualitative proof of his resulting physical and cognitive limitations necessary to measure the seriousness of those limitations and meet the standard set forth in Toure v Avis Rent A Car Sys. (98 NY2d 345 [2002]).  I cannot agree that the proof presented by plaintiff meets the Toure standard and, therefore, I respectfully dissent.

        In Toure, the Court of Appeals emphasized that, in the absence of numerical measurements, an expert's "qualitative assessment of a plaintiff's condition" is sufficient to establish the extent or degree of limitation so long as "the evaluation has an objective basis and compares the plaintiff's limitations to the normal function, purpose and use of the affected body organ, member, function or system" (id. at 350; see Perl v Meher, 18 NY3d 208, 217 [2011]).  Toure clarified that, before the trier of fact can find that a plaintiff suffered a serious injury within the meaning of Insurance Law § 5102 (d), there must be objective medical evidence to substantiate the claimed limitation and an

expert must undertake a "'comparative determination'" of the degree or qualitative nature of the injury in relation to normal functioning (Toure v Avis Rent A Car Sys., 98 NY2d at 353, quoting Dufel v Green, 84 NY2d 795, 798 [1995]).  Toure noted that, without objective medical evidence, "the legislative intent of the No-Fault Law to eliminate statutorily-insignificant injuries" is frustrated (Toure v Avis Rent A Car Sys., 98 NY2d at 351).  In addition, Toure emphasized that, if a limitation is assessed as "'minor, mild or slight'" when compared to normal functioning, it does not qualify as a serious injury (id. at 353, quoting Licari v Elliott, 57 NY2d 230, 236 [1982]; see DeHaas v Kathan, 100 AD3d 1057, 1058 [2012]; Womack v Wilhelm, 96 AD3d 1308, 1311 [2012]).  In my view, these requirements were not met here and, as a result, the majority has strayed from the standard set forth in Toure in finding that the verdict was supported by legally sufficient evidence.

Despite the majority's characterization of the evidence as "objectively observed," plaintiff's longtime primary care physician readily acknowledged that "virtually all" of plaintiff's complaints were subjective in nature, that "all of the diagnostics of [plaintiff's] head have come out normal" and that the neurologist and neuro-opthalmologist that he referred plaintiff to did not find anything objectively wrong with him. To the extent that the physician can be said to have compared plaintiff's limitations to plaintiff's pre-accident functioning, the physician did no more than describe plaintiff as "[n]ot as quick."  The physician went on to explain that plaintiff's "candle is burning a little dimmer than what it used to be, so he's a little slower in cognition and a little slower physically."  As a comparative determination, the physician's reliance on the phrase "a little" suggests a limitation that is synonymous with "minor, mild or slight."  Even when plaintiff's counsel parroted the statutory language defining serious injury by asking if plaintiff had "suffered a significant limitation of his brain," and the physician responded "yes" (see Dean v Ahn Ja Jin, 78 AD3d 1297, 1299 [2010]; Licygiewicz v Stearns, 61 AD3d 1254, 1255 [2009]), the physician did not change his prior testimony or opine that the combined impact of "a little slower" cognitive and physical functioning would, together, increase the measure or seriousness of plaintiff's claimed limitations

(compare Viscusi v Ostrowski, 25 Misc 3d 1213[A], 2007 NY Slip Op
52652[U], *4 [Sup Ct, Schenectady County 2007], affd for reasons
stated below 53 AD3d 965 [2008]).

     As for the testimony of the nurse practitioner who
coordinated plaintiff's care at the Upstate Concussion Center, he
described a concussion as synonymous with "mild traumatic brain
injury."  In addition, he conceded that no neuropsychological
testing was performed on plaintiff, despite the fact that testing
does exist that could have been used to objectively confirm if
plaintiff did, in fact, suffer more than "a little" cognitive
deficit.  While the nurse practitioner testified that plaintiff
was still symptomatic 18 months after the accident, he conceded
that, because no testing was done, plaintiff's continued
treatment was solely based upon his "report that he was having
cognitive difficulties."  A review of plaintiff's medical records
from the Upstate Concussion Center reveals that, although a
psychologist found that plaintiff suffered "several physical,
cognitive, and emotional symptoms that are consistent with post-
concussion sequelae," the psychologist offered no comparative
determination or qualitative assessment and failed to set forth
any objective testing that was done to confirm her findings or
describe the evidence upon which she based her conclusion, aside
from plaintiff's subjective complaints.

     Despite the Toure requirements, the medical opinions
regarding the present limitation to plaintiff's cognitive and
physical functioning are based on his actions and complaints,
which are subjective in nature, rather than objectively based
medical testing (cf. Houston v Hofmann, 75 AD3d 1046, 1048-1049
[2010]; Villeda v Cassas, 56 AD3d 762, 763 [2008]; compare
Flanders v National Grange Mut. Ins. Co., 124 AD3d 1035, 1036-
1038 [2015]).  It is undisputed that no objective medical testing
was performed on plaintiff in order to confirm his subjective
symptoms, aside from a CAT scan and X ray that did not disclose
any abnormalities.  Although the nurse practitioner testified
that neurological diagnostic testing was available, there was no

explanation as to why it was not utilized.[1]  In addition, the testimony of the nurse practitioner makes clear that he undertook no "'comparative determination'" to measure the severity of plaintiff's present limitations so as to enable the jury to determine whether they qualify as significant or consequential (Toure v Avis Rent A Car Sys., 98 NY2d at 353, quoting Dufel v Green, 84 NY2d at 798; see June v Gonet, 298 AD2d 811, 813 [2002]).

In sum, I cannot agree that the medical evidence relied upon by the majority supports the conclusion that plaintiff presented legally sufficient evidence to sustain the jury verdict in his favor.  Accordingly, I would affirm Supreme Court's order and judgment setting aside the verdict.

ORDERED that the order and judgment are reversed, on the law, with costs, motion denied and verdict reinstated.

ENTER:

Robert D. Mayberger
Clerk of the Court

---

[1]  This is not to suggest that neurological or diagnostic testing is always required to establish a claim of a serious brain injury.  Rather, here, because the medical providers who examined plaintiff did not base their assessments on anything other than plaintiff's subjective actions and complaints, medical testing would have provided an objective way for the medical providers to substantiate those subjective symptoms (see e.g. Flanders v National Grange Mut. Ins. Co., 124 AD3d at 1037).