Philippe v Islam (2025 NY Slip Op 50810(U))

[*1]

Philippe v Islam

2025 NY Slip Op 50810(U)

Decided on May 26, 2025

Supreme Court, Kings County

Maslow, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on May 26, 2025
Supreme Court, Kings County

Jeffery Jean Philippe, Plaintiff,

against
Rasel Islam, MDMYNUL ISLAM, AND THIERRY J. DESTOUCHES, Defendants.

Index No. 520505/2023

Alexander Umansky, Fort Lee, New Jersey (James A. Maleady of counsel) for Plaintiff.
Baker, McEvoy & Moskovits, Freeport (Arlen Moore of counsel), for Defendants Rasel Islam and Mdmynul Islam.
Law Offices of Jennifer S. Adams, Williamsville (Richard Ertel of counsel), for Defendant Thierry J. Destouches.

Aaron D. Maslow, J.

The following numbered papers were used on these motions: NYSCEF Document Numbers 21-37, 47-56.
Upon the foregoing papers, having heard oral argument, and due deliberation having been had, the within matter is determined as follows.
Issue
Did Plaintiff Jeffery Jean Philippe ("Plaintiff"), demonstrate an issue of fact as to having sustained a "serious injury," as the term is defined in Section 5102 (d) of the Insurance Law, set forth in the Comprehensive Motor Vehicle Insurance Reparations Act of the State of New York (Article 51 of the Insurance Law), resulting from a motor vehicle accident.[FN1]

Introduction
Plaintiff brought suit against Defendants Rasel Islam, Mdmynul Islam, and Thierry J. Destouches ("Defendants") for personal injuries. Plaintiff claims Defendants were negligent because of a motor vehicle accident that occurred on April 11, 2022 (see NYSCEF Doc Nos. 24, 32, complaint). Per Plaintiff's bill of particulars, Plaintiff sustained injuries to the cervical spine and the left shoulder (see NYSCEF Doc No. 26, bill of particulars ¶ 9).[FN2]
As for categories of serious injury which Plaintiff claims entitles him to sue in accordance with Insurance Law § 5102 (d), he listed the following: permanent consequential limitation of use of a body organ or member ("permanent consequential limitation"); significant limitation of use of a body function or system ("significant limitation"); and a medically determined injury or impairment of a non-permanent nature which prevents the injured person from performing substantially all of the material acts which constitute such person's usual and customary daily activities for not less than ninety days during the one hundred eighty days immediately following the occurrence of the injury or impairment ("90/180").[FN3]

In two separate motions, Defendants Rasel Islam and Mdmynul Islam ("Islam Defendants") and Thierry J. Destouches seek summary judgment under CPLR 3212, asserting that Plaintiff has not met the serious injury threshold requirement pursuant to Insurance Law § 5104 (a) in order to maintain an action for personal injuries arising out of negligence in the use of a motor vehicle. Summary judgment is a drastic remedy that should be granted only if no triable issues of fact exist and the movant is entitled to judgment as a matter of law (see Alvarez v Prospect Hosp., 68 NY2d 320 [1986]; Andre v Pomeroy, 35 NY2d 361 [1974]).
The issue of whether a claimed injury falls within the statutory definition of "serious injury" is a question of law for the Court, which may be decided on a motion for summary judgment (see Licari v Elliott, 57 NY2d 230 [1982]). The moving Defendants bear the initial burden of establishing, by the submission of evidentiary proof in admissible form, a prima facie [*2]case that Plaintiff has not suffered a serious injury proximately resulting from the subject motor vehicle accident (see Toure v Avis Rent A Car Sys., 98 NY2d 345 [2002]; Gaddy v Eyler, 79 NY2d 955 [1992]). A failure to make such a showing requires denial of the motion, regardless of the sufficiency of the opposing papers (see Winegrad v New York Univ. Med. Ctr., 64 NY2d 851 [2016]).
If Defendants have made such a showing that Plaintiff has not suffered a serious injury from the subject motor vehicle accident as a matter of law, i.e., that Plaintiff does not qualify under the relevant serious injury threshold categories as there are no material issues of fact, the burden shifts to Plaintiff to submit evidence in admissible form to establish that there are material issues of fact (see Franchini v Palmieri, 1 NY3d 536 [2003]; Grasso v Angerami, 79 NY2d 813 [1991]).
Defendants' Prima Facie Case
Defendants rely on their medical expert, Hugh Selznick, M.D. ("Dr. Selznick"), an orthopedic surgeon, to establish a prima facie case arguing Plaintiff's lack of serious injury. On November 4, 2024 (report dated November 4, 2024), Dr. Selznick performed an independent medical examination (IME) on Plaintiff, which included examining alleged cervical spine and left shoulder conditions. Dr. Selznick opined that the cervical spine and left shoulder were found fully functional; alleged injuries had resolved (see NYSCEF Doc Nos. 28, 35, Selznick IME rpt).[FN4]
 Since the body parts mentioned in the bill of particulars, namely the cervical spine and the left shoulder, were discussed in Dr. Selznick's IME report and found normal, Defendants established their prima facie case, shifting the burden to Plaintiff. In Gaddy v Eyler (79 NY2d 955), for example, the defendant established a prima facie case that the plaintiff's injuries did not constitute a serious injury through the affidavit of a physician who examined the plaintiff and concluded that the plaintiff had a normal neurological exam; the burden, in turn, then shifted to the plaintiff. Similarly, here, the burden shifts to Plaintiff to rebut Defendants' prima facie case regarding the permanent consequential limitation and significant limitation categories.[FN5]

Based on Plaintiff's deposition and bill of particulars, Plaintiff was confined to bed for five days.[FN6]
A prima facie case of Plaintiff not meeting 90/180 was established (see Il Chung Lim v Chrabaszcz, 95 AD3d 950 [2d Dept 2012] [incapacitated for two days per bill of particulars]).[FN7]

Plaintiff's Opposition
Plaintiff submitted documentation from three doctors: Dr. William King ("Dr. King"), who examined Plaintiff on June 7, 2022; Dr. Mark Cohen ("Dr. Cohen"), who examined Plaintiff on March 13, 2025; and Dr. Steven Losik ("Dr. Losik"), who reviewed cervical spine and left shoulder MRIs.
Although the left shoulder was examined by Dr. King on June 7, 2022, the cervical spine was not. Moreover, Dr. King did not indicate whether a goniometer or an inclinometer was used, nor which standards were applied (e.g., AMA Guide to Impairment 5th Edition). In Gersbeck v Cheema (176 AD3d 684 [2d Dept 2019]), the defendant prevailed on a summary judgment motion on serious injury threshold since the plaintiff's "chiropractor did not state the objective method he used to measure the plaintiff's range of motion, such as by using a goniometer" (176 AD3d at 685). A goniometer, an instrument used to measure joint angles and range of motion, helps healthcare professionals assess and monitor joint function and diagnose conditions affecting movement in an objective manner. When a healthcare professional uses a goniometer, an objective assessment is performed. Here, however, because Dr. King did not use a goniometer or an inclinometer, an objective assessment was not performed, meaning that Dr. King's examination of Plaintiff cannot be used as evidence to rebut Defendants' prima facie case (see NYSCEF Doc No. 54, King aff; Mitchell v A & A Tr., Inc., 230 AD3d 1238 [2d Dept 2024]; Gonzalez v Cohn, 224 AD3d 667 [2d Dept 2024]; Dinc v Shalesi, 208 AD3d 558 [2d Dept 2022]; Gersbeck v Cheema, 176 AD3d 684.
In Dr. Cohen's examination of March 13, 2025, both the cervical spine and the left [*3]shoulder were examined; a goniometer was used to perform range of motion testing, as attested to in Dr. Cohen's affirmation (see NYSCEF Doc No. 51, Cohen aff). Per his affirmation, Plaintiff's range of motion was diminished, permanent injuries had been sustained, and there was a direct causal relationship between the accident described and Plaintiff's current injuries. Dr. Cohen found as follows:
Cervical spine
Flexion (Normal 60): 55 with firm endpoint palpable.
Extension (Normal 45): 40 with firm endpoint palpable.
RT Lateral Rotation (Normal 80): 70 with firm endpoint palpable.
LT Lateral Rotation (Normal 80): 70 with firm endpoint palpable.
LEFT SHOULDER RANGE OF MOTION:
Flexion (Normal 180): 160
Extension (Normal 60): 45
Abduction (Normal 180): 165
Adduction (Normal 30): 25
Internal Rotation (Normal 70): 65
External Rotation (Normal 90): 75 (NYSCEF Doc No. 51 at PDF 4.)
It should be noted that the ranges of motion findings, when converted to percentages of limitation, yield the following:
Cervical flexion: 8.3% limitation
Cervical extension: 11.1% limitation
Cervical right lateral rotation: 12.5% limitation
Cervical left lateral rotation: 12.5% limitation
Left shoulder flexion: 11.1% limitation
Left shoulder extension: 25.0% limitation
Left shoulder abduction: 8.3% limitation
Left shoulder adduction: 16.7% limitation
Left shoulder internal rotation: 7.1% limitation
Left shoulder external rotation: 16.7% limitation
The only movement which exceeded the 20% limitation found significant in Dufel v Green (84 NY2d 795 [1995]) and Kholdarov v Hyman (165 AD3d 1087 [2d Dept 2018]) was left shoulder extension. A limitation as high as 15% is not significant (see Waldman v Dong Kook Chang, 175 AD2d 204 [2d Dept 1991]).
The result of this analysis is that the only evidence on this motion of an objectively measured limitation in Plaintiff which was significant was left shoulder extension, measured at 25.0%, during an examination performed nearly three years after the accident.
Dr. Losik's MRI reports found multiple disc herniations in the cervical spine and thickened supraspinatus and infraspinatus tendons and rotator cuff impingement in the left shoulder (see NYSCEF Doc No. 52, MRI rpts at PDF 4-5).
Discussion
This matter was previously adjourned on April 4, 2025, in accordance with a stipulation whereby Plaintiff's opposition was due by April 25, 2025. Another adjournment request filed on May 13, 2025 was rejected by the Court. Plaintiff's opposition was filed late, on May 13, 2025, three days prior to oral argument, thus impairing Defendant's ability to submit a reply. Defendants having made out a prima facie case of lack of serious injury and Plaintiff's opposition being precluded, Defendants' motions for summary judgment must be granted.
In any event, even if Plaintiff's opposition were considered, Plaintiff did not rebut Defendants' prima facie case on permanent consequential limitation and significant limitation because Plaintiff's counsel conceded on the record that the only medical evidence of reduced ranges of motion measured by a goniometer were from Dr. Cohen's March 13, 2025 examination (performed nearly three years after the accident).
Since Dr. King did not use a goniometer or inclinometer to measure Plaintiff's range of motion in the left shoulder, none of Dr. King's findings are considered objective. Further, it was Dr. Cohen who examined and used a goniometer on Plaintiff years later, recording reduced ranges of motion in the cervical spine and left shoulder. One finding showing that Plaintiff suffered reduced ranges of motion years after the accident does not create an issue of fact sufficient to rebut Defendants' prima facie case of no serious injury (see Lea v Cocuzza, 43 AD3d 882 [2d Dept 2007] [plaintiff's orthopedist did not examine plaintiff until four years after accident]; Letellier v Walker, 222 AD2d 658 [2d Dept 1995] [insufficient proof of duration of impairment]).
Dr. Losik's MRI findings do not rebut Defendants' prima facie case (see Ranford v Tim's Tree & Lawn Serv., Inc., 71 AD3d 973 [2d Dept 2010] [mere existence of herniations not evidence of serious injury in absence of objective evidence of limitations]; Acosta v Alexandre, 70 AD3d 735 [2d Dept 2010] [ACL tear without objective evidence of extent of limitations does not rebut defendant's prima facie case of no serious injury]).
At oral argument, Plaintiff's counsel asserted that Defendants did not prove their prima facie case regarding the 90/180 category because Defendants' doctor who conducted the IME, Dr. Selznick, did not opine as to the 90/180 category. Plaintiff's counsel stated that Dr. Selznick was the only one who was required to opine on 90/190. The Court disagrees with Plaintiff on this matter. Dr. Selznick did not examine Plaintiff during the 180 days after the accident, so Dr. Selznick did not have to opine as to the 90/180 category.[FN8]
Accordingly, it was not Dr. Selznick's duty to opine as to the 90/180 category. Dr. Selznick conducted an examination and opined as to his findings. That suffices (see Toure a Avis Rent A Car Sys., Inc., 98 NY2d 345; Gaddy v Eyler, 79 NY2d 955). Neither was Dr. Selznick required to review Plaintiff's medical records from the 180-day post-accident period (see Hayes v Vasilios, 96 AD3d 1010 [2d Dept 2012] [defendants' examining doctor's report sufficed to satisfy prima facie burden as to alleged injuries even though she didn't review plaintiff's medical records since she performed objective tests on [*4]examination showing full range of motion].
Moreover, Plaintiff's deposition testimony and bill of particulars confirmed that he was confined to bed for just a few days. As such, the 90/180 category of serious injury is not met by Plaintiff (see Il Chung Lim v Chrabaszcz, 95 AD3d 950):
Q Once the accident happened was there any period of time following the accident that you were confined to bed and you couldn't get out of bed other than, let's say, to use the restroom or grab yourself some water, meaning you're stuck in bed?
A No.
Q How bout confined to home, was there a period of time you were confined to home where you couldn't get out of your house other than to see the doctors but you couldn't do anything else?
A There was a week, yes. (NYSCEF Doc Nos. 27, 37 at 60, EBT tr, line 21, through 61, line 8.)
Plaintiff also testified that activities became more difficult after the accident. He did not testify that any activities could not be performed (see id. at 61, line 22, through 62, line 9). This does not fulfill 90/180 (see Lanzarone v Goldman, 80 AD3d 667 [2d Dept 2011]; Lauretta v County of Suffolk, 273 AD2d 204 [2d Dept 2000]). While he lost maybe three or four months from work, he did not recall being ordered by a doctor to refrain from work. Hence, Plaintiff did not sustain a 90/180 serious injury (see Pierre v Nanton, 279 AD2d 621 [2d Dept 2001] [no 90/180 on plaintiff's part]).
Conclusion
Accordingly, Defendants' summary judgment motions seeking dismissal of Plaintiff's complaint are both GRANTED. Plaintiff failed to establish that there is a material issue of fact as to whether his injuries rise to the statutorily required serious injury threshold (see Zuckerman v City of New York, 49 NY2d 557 [1980]). The Clerk shall enter judgment dismissing Plaintiff's complaint against all Defendants.

Footnotes

Footnote 1:Section 5102 (d) of the Insurance Law states the following: " 'Serious injury' means a personal injury which results in death; dismemberment; significant disfigurement; a fracture; loss of a fetus; permanent loss of use of a body organ, member, function or system; permanent consequential limitation of use of a body organ or member; significant limitation of use of a body function or system; or a medically determined injury or impairment of a non-permanent nature which prevents the injured person from performing substantially all of the material acts which constitute such person's usual and customary daily activities for not less than ninety days during the one hundred eighty days immediately following the occurrence of the injury or impairment."

Footnote 2:While Plaintiff argues that there were back injuries (see NYSCEF Doc No. 47, Umansky aff ¶¶ 5, 18, 28-30, 33), the lumbar spine was not listed on the bill of particulars as having been injured (see NYSCEF Doc Nos. 26, 34 ¶ 9). Therefore, Plaintiff's allegations on this motion with respect to the back are not considered (see Gonzalez v Cohn, 224 AD3d 667 [2d Dept 2024]; Noor v Fera, 200 AD3d 1366 [3d Dept 2021]; Kreimerman v Stunis, 74 AD3d 753 [2d Dept 2010]; Lee v Laird, 66 AD3d 1302 [3d Dept 2009]).

Footnote 3:Plaintiff's attorney's affirmation states that his client does not claim the 90/180 category (see NYSCEF Doc Nos. 47, 55 ¶ 29), despite it being listed in the bill of particulars. However, later on, in his affirmation submitted in opposition to the Islam Defendants' motion, the attorney references matters relating to the 90/180 category (see NYSCEF Doc No. 55 ¶¶ 36-39). This accounts for the Court's discussion of the 90/180 category.

Footnote 4:Regarding the cervical spine, Dr. Selznick opined the following: "Examination of the neck reveals no tenderness to palpation of the cervical paraspinal musculature. No muscle spasm was noted. Range of motion of the cervical spine is flexion to 50 degrees (50 degrees normal), extension to 60 degrees (60 degrees normal), lateral bend to 45 degrees (45 degrees normal), [and] right and left rotation to 80 degrees (80 degrees normal)." (NYSCEF Doc Nos. 28, 35, Selznick IME rpt at 2.)
Regarding the left shoulder, Dr. Selznick opined the following: "There is no deltoid atrophy. There is no tenderness on palpation of the acromioclavicular joint or over the greater tuberosity. Range of motion of the shoulder reveals flexion to 180 degrees (180 degrees normal), extension to 40 degrees (40 degrees normal), abduction to 180 degrees (180 degrees normal), adduction to 30 degrees (30 degrees normal), internal rotation to 80 degrees (80 degrees normal), and external rotation to 90 degrees (90 degrees normal). There is no winging of the scapula. There is no sensory loss to light touch or pinprick." (Id.)

Footnote 5:In Toure v Avis Rent A Car Sys. (98 NY2d 345), the defendants' IME doctor's report met the defendants' prima facie burden to establish lack of serious injury. Similarly, here, Dr. Selznick's IME report met Defendants' prima facie burden, shifting the burden to Plaintiff.

Footnote 6:The following is from Plaintiff's EBT transcript:
Q How about confined to home, was there a period of time you were confined to home where you couldn't get out of your house other than to see the doctors but you couldn't do anything else?
A There was a week, yes.
Q When was that?
A I don't remember. It was like two years ago but I know there was a point it was a week I wasn't good at all, my body was just stiff. (NYSCEF Doc Nos. 27, 37, EBT tr at 61, lines 4-12.)

Footnote 7:Since Defendants made out a prima facie case of there being no serious injury as per the asserted categories of permanent consequential limitation, significant limitation, and 90/180, which prima facie case was not rebutted, it is not necessary to consider the Islam Defendants' proffered MRI review of Dr. Mark J. Decker submitted in support of the contention that any injuries claimed by Plaintiff were not proximately caused by the subject accident.

Footnote 8:Indeed, this action was commenced on July 17, 2023, per NYSCEF's recordation of the filing of the summons and complaint. This was more than one year past the April 11, 2022 accident. It would have been impossible for Defendants' to have arranged for Dr. Selznick to examine Plaintiff at an IME within the 180-day period post-accident as part of discovery herein.